JOTT, INC v CLINTON CHARTER TOWNSHIP

Docket Nos. 173879, 181802. Submitted November 20, 1996, at Detroit. Decided July 15, 1997, at 9:20 A.M.

    Jott, Inc., a licensed bar having an entertainment permit issued by the Michigan Liquor Control Commission, desiring to offer "topless" entertainment, brought an action in the Clinton Circuit Court against the Clinton Charter Township, seeking a declaration that both Clinton Township Ordinance No. 260, which places limitations on the location within the township of establishments offering topless entertainment, and Clinton Township Ordinance No. 291-A, which prohibits nudity in an establishment licensed by the Michigan Liquor Control Commission, are unconstitutional and an injunction prohibiting the township from enforcing the ordinances. The defendant responded by seeking an injunction restraining the plaintiff from violating the provisions of the ordinances and the provisions of a covenant that the plaintiff had signed when it sought the entertainment permit whereby it covenanted that it would not offer topless entertainment. The court, George E. Montgomery, J., ruled that ordinance 260 was a constitutionally valid restriction on the plaintiff's First Amendment rights and enjoined the plaintiff from providing adult entertainment in violation of ordinance; however, the court refused to address the constitutionality of ordinance 291-A on the basis that ordinance 291-A had been declared unconstitutional by a federal district court in a related action involving the same parties and that the covenant was unenforceable because it had been executed in compliance with the provisions of the predecessor of ordinance 291-A. The court subsequently held that the covenant was valid and enforceable, but refused to grant injunctive relief because the covenant provided its own remedy at law. The plaintiff appealed (Docket No. 173879). Thereafter, the parties jointly secured the vacation of the federal court's decision and resubmitted the question of the constitutionality of ordinance 291-A to the circuit court. The court declared that the definition of nudity in ordinance 291-A was overly broad in the constitutional sense and, accordingly, that the ordinance was unenforceable. The defendant appealed (Docket No. 181802). The appeals were consolidated.

    The Court of Appeals *held*:

1. Because the plaintiff made a facial challenge to ordinance 260 by asserting that there was no legitimate governmental purpose that was served by its enactment and that it had the purpose and effect of totally excluding constitutionally protected adult uses in the township, the plaintiff did not have to exhaust its nonjudicial remedies before the township by seeking rezoning of its property before it could bring a judicial challenge to the constitutionality of ordinance 260. Accordingly, the question of the constitutionality of ordinance 260 was ripe for judicial review.

2. The rights of free speech and free association under the First Amendment and Const 1963, art 1, § 5 are coextensive.

3. Nonobscene erotic entertainment, such as topless dancing, is a form of protected expression under the First Amendment, but enjoys less protection than other forms of expression protected under the First Amendment, such as political speech.

4. A zoning ordinance that does not suppress protected forms of sexual expression, but which rather is designed to combat the undesirable secondary effects of businesses that purvey such activity, is to be reviewed under the standards applicable to content-neutral time, place, and manner regulations. Content-neutral time, place, and manner regulations are acceptable as long as they are designed to serve a substantial government interest and do not unreasonably limit alternative avenues of communication.

5. Because ordinance 260 does not ban topless dancing, but, rather, merely restricts it to certain locations within the township, and the aim of the ordinance is not to suppress such activity, but to combat the secondary effects of adult activities on surrounding areas in order to avoid blighting, ordinance 260 must be viewed as a content-neutral time, place, and manner regulation. Accordingly, the ordinance is valid with respect to a First Amendment challenge if it is found to have been designed to serve a substantial government interest and allows for reasonable alternative avenues of communication.

6. The defendant was able to show justification of the need for the location restrictions contained in ordinance 260 in order to ensure that the areas surrounding places of adult entertainment did not experience the "deleterious, blighting, or downgrading influences" that the ordinance was intended to minimize. The township properly relied on the experiences of other municipal corporations with respect to the effect that such businesses had on surrounding areas in concluding that there was a need for geographical restrictions with respect to the location of places of adult entertainment.

7. The trial court properly concluded that the number, size, and location of parcels that were permitted under the provisions of

ordinance 260 to be used for an adult entertainment establishment featuring topless dancing provided a reasonable alternative means of operating such a business in the township.

8. The plaintiff has failed to show that the restrictions contained in ordinance 260 should not apply to its property, which is a nonconforming business use that was permitted to continue to operate in an area that is now zoned for industrial uses.

9. A government regulation burdening expressive activity that is protected by the First Amendment is sufficiently justified if it is within the constitutional power of the government, it furthers an important or substantial government interest, the government interest is unrelated to the suppression of free expression, and the incidental restriction of alleged First Amendment freedoms is no greater than essential to the furtherance of that interest.

10. A state, in the exercise of it broad powers under the Twenty-first Amendment, may properly prohibit topless dancing in establishments that are licensed to serve alcoholic beverages where such regulation is rationally related to the furtherance of legitimate state interests.

11. A township has the power to regulate liquor traffic within its own bounds in the exercise of its police powers, subject to the authority of the Liquor Control Commission only where a conflict arises.

12. Because the Liquor Control Commission has promulgated a regulation that specifically prohibits an on-premises licensee from allowing to be displayed in or on the licensed premises public view of a person's genitals or anus or other types of nudity prohibited by statute or local ordinance, the prohibition in ordinance 291-A of nudity involving exposure of the breast area in an establishment licensed by the Liquor Control Commission is not in conflict with the authority of the Liquor Control Commission.

13. The provision in the township ordinance act authorizing townships to adopt ordinances regulating the public health, safety, or general welfare through the regulation of public nudity that consists of the displaying in a public place of an individual's genitals or anus does not preclude a township from adopting an ordinance pursuant to its police powers to regulate the liquor trade that prohibits nudity in an establishment licensed by the Liquor Control Commission that includes within its definition of nudity the display of the breast area. Accordingly, ordinance 291-A, which deals with nudity in licensed liquor establishments, is not preempted by or in conflict with MCL 41.181; MSA 5.45(1), which is concerned with the general regulation of nudity.

14. The provisions in ordinance 291-A prohibiting the display in a licensed liquor establishment of a person's pubic area, genitals, anus, and breast area are rationally and reasonably related to the objective of combating the undesirable social effects stemming from a combination of alcohol and the public exposure of those body parts. Although the trial court properly found that the ordinance was overbroad in the constitutional sense by including in its definition of nudity the public display of portions of the legs, hips, and stomach, the court erred in declaring the entire ordinance unconstitutional on the basis of those provisions, because those provisions are clearly severable from the rest of the ordinance.

15. The question of the enforceability of the covenant given by the plaintiff at the time it sought approval of its entertainment permit by the Liquor Control Commission is not properly raised in the context of these appeals, and, therefore, does not need to be addressed.

Affirmed in part and reversed in part.

1. ZONING — ORDINANCES — EXHAUSTION OF REMEDIES — FACIAL CHALLENGES — JUDICIAL REVIEW.

A party making a facial challenge to a zoning ordinance need not exhaust its administrative remedies before seeking judicial review; a facial challenge is one that attacks the very existence or enactment of an ordinance and alleges that the mere existence and threatened enforcement of the ordinance adversely affects all property in the market rather than a particular parcel.

2. CONSTITUTIONAL LAW — FREE SPEECH — FIRST AMENDMENT — MICHIGAN CONSTITUTION.

The rights of free speech and free association under the First Amendment and the Michigan Constitution are coextensive (US Const, Am I; Const 1963, art 1, § 5).

3. CONSTITUTIONAL LAW — FREE SPEECH — NONOBSCENE EROTIC ENTERTAINMENT.

Nonobscene erotic entertainment, such as topless dancing, is a form of protected expression under the First Amendment, but enjoys less protection than other forms of expression protected under the First Amendment, such as political speech (US Const, Am I).

4. ZONING — ORDINANCES — FREE SPEECH — SEXUAL EXPRESSION — BUSINESS REGULATION — STANDARD OF REVIEW.

A zoning ordinance that does not suppress protected forms of sexual expression, but which rather is designed to combat the undesirable secondary effects of businesses that purvey such activity, is to be reviewed under the standards applicable to content-neutral time,

place, and manner regulations; content-neutral time, place, and manner regulations are acceptable as long as they are designed to serve a substantial government interest and do not unreasonably limit alternative avenues of communication.

5. ZONING — PLACES OFFERING ADULT ENTERTAINMENT — GEOGRAPHICAL RESTRICTIONS — SUBSTANTIAL GOVERNMENT INTERESTS.

A municipal corporation has a substantial government interest in restricting the location of places offering adult entertainment for the purpose of ensuring that the surrounding areas do not become blighted or suffer deleterious effects; a municipal corporation need not conduct its own independent study of the deleterious effect of places of adult entertainment on the surrounding area, but may properly rely on studies of the effect of such business on the surrounding area that have been conducted by other municipal corporations.

6. CONSTITUTIONAL LAW — FREE SPEECH — GOVERNMENT REGULATIONS.

A government regulation burdening expressive activity that is protected by the First Amendment is sufficiently justified if it is within the constitutional power of the government, it furthers an important or substantial government interest, the government interest is unrelated to the suppression of free expression, and the incidental restriction of alleged First Amendment freedoms is no greater than essential to the furtherance of that interest.

7. INTOXICATING LIQUORS — CONSTITUTIONAL LAW — TOPLESS DANCING.

A state, in the exercise of its broad powers under the Twenty-first Amendment, may properly prohibit topless dancing in establishments that are licensed to serve alcoholic beverages where such regulation is rationally related to the furtherance of legitimate state interests (US Const, Am XXI).

8. INTOXICATING LIQUORS — REGULATION OF LIQUOR TRADE — TOWNSHIPS — LIQUOR CONTROL COMMISSION.

A township has the power to regulate liquor traffic within its own bounds in the exercise of its police powers, subject to the authority of the Liquor Control Commission only when a conflict arises.

9. INTOXICATING LIQUORS — TOWNSHIPS — TOWNSHIP ORDINANCE ACT — NUDITY.

The provision in the township ordinance act authorizing townships to adopt ordinances regulating the public health, safety, or general welfare through the regulation of public nudity that consists of the displaying in a public place of an individual's genitals or anus does not preclude a township from adopting pursuant to its police powers to regulate the liquor trade an ordinance that prohibits nudity in an establishment licensed by the Liquor Control Commission

that includes within its definition of nudity the display of the breast area (MCL 41.181; MSA 5.45[1]).

*Robert D. Horvath,* for the plaintiff.

*John A. Dolan (Jerald R. Lovell,* of Counsel), for the defendant.

Before: DOCTOROFF, C.J., and CORRIGAN and R. J. DAN-HOF* , JJ.

CORRIGAN, J. These consolidated appeals involve plaintiff's attempt to offer "topless" entertainment in Clinton Charter Township. In Docket No. 173879, plaintiff, Jott, Inc., appeals by right an order declaring Clinton Township Zoning Ordinance 260 (restricting certain "adult uses" to districts zoned "B-3" general business use) constitutional and enjoining plaintiff from providing "adult entertainment" contrary to the ordinance. Plaintiff also challenges the trial court's decision upholding a 1984 covenant in which plaintiff agreed not to offer topless entertainment in Clinton Township. In Docket No. 181802, defendant Clinton Township appeals by right an order declaring Clinton Township Zoning Ordinance 291-A (prohibiting nudity in liquor-licensed establishments) unconstitutionally overbroad and, therefore, unenforceable. We affirm the trial court's decision upholding the constitutionality of ordinance 260. With respect to ordinance 291-A, while we agree that subparts f and g of the definition of "nudity" may not be sustained, we reverse the trial court's decision declaring the entire ordinance unconstitutional because we hold that that subparts f and g may be severed, leaving the remainder of the ordi-

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

nance constitutionally intact and enforceable. Finally, we find it unnecessary to address the validity of the 1984 covenant.

### I. UNDERLYING FACTS AND PROCEEDINGS

Plaintiff operates a bar located on Groesbeck Highway in Clinton Township. When plaintiff purchased the bar in 1984, plaintiff covenanted, in exchange for defendant's approval of plaintiff's application to the Liquor Control Commission (LCC) for an entertainment permit, that it would offer only "wholesome entertainment" and would not offer "any entertainment of a lewd, obscene, or immoral nature including, but not limited to topless performers." The covenant provided that, in the event of a violation, defendant would be entitled to "take appropriate action before the Michigan Liquor Control Commission . . . to cancel and terminate the entertainment permit pursuant to which th[e] covenant [was] given."

Despite its 1984 covenant, in 1992, plaintiff decided to offer "topless" dancing. Apart from the 1984 covenant, two separate local ordinances affected plaintiff's ability lawfully to provide topless entertainment in Clinton Township. First, local zoning ordinance 260 regulated certain adult uses (including establishments featuring "topless" dancers) by, in part, restricting such uses to "B-3" general business use zoning districts. Plaintiff's bar was located in an "I-2" general industrial zoning district.[1] Second, in November 1991,

---

[1] Although liquor-licensed establishments were formerly permitted in I-2 districts, a revision of defendant's master plan in the early 1990s led to certain changes in the zoning ordinances, with the result that liquor-licensed establishments are no longer permitted in I-2 districts, thereby rendering plaintiff's continued operation of the bar a nonconforming use.

defendant adopted ordinance 291, which prohibited "nudity" in liquor-licensed establishments or establishments that collect a cover charge or serve food or beverages. The ordinance defined "nudity" in a manner that encompassed "topless" entertainment.

On May 11, 1992, plaintiff commenced the present action against defendant in the Macomb Circuit Court, seeking a declaratory judgment that ordinance 291 was unconstitutional insofar as it defined "nudity" in a manner that prohibited topless entertainment in liquor-licensed establishments and an injunction to enjoin enforcement of the ordinance. Defendant responded by filing a counterrequest for injunctive relief. Following a series of hearings, the trial court issued a preliminary injunctive order on September 14, 1992, restraining plaintiff from violating the provisions of ordinance 291, the 1984 covenant, and ordinance 260.

Simultaneously, on October 2, 1992, plaintiff's president, Scott Nadeau, and several other named individuals who had been arrested for violating ordinance 291 commenced a separate action against defendant in federal court, seeking to enjoin defendant from enforcing ordinance 291. On November 9, 1992, while the federal action was pending, defendant adopted ordinance 291-A, which repealed provisions of ordinance 291. The amended ordinance continued to prohibit "nudity" in liquor-licensed establishments, but eliminated from its coverage establishments that collect a cover charge or serve food or beverages. On January 26, 1993, the federal court issued a judgment declaring ordinance 291-A unconstitutional and permanently enjoining defendant from enforcing the

ordinance. Defendant thereafter appealed that ruling to the Sixth Circuit Court of Appeals.

Plaintiff meanwhile filed an amended complaint in the present case seeking, inter alia, injunctive relief and a declaratory judgment that ordinance 291-A and ordinance 260 were both unconstitutional. Defendant filed a countercomplaint seeking, inter alia, injunctive relief and a declaratory judgment that plaintiff's use of topless dancers constituted a nuisance per se under ordinance 260 and the 1984 covenant.

After a bench trial in April 1993, on June 25, 1993, the trial court ruled that ordinance 260 was a constitutionally valid time, place, and manner restriction on plaintiff's First Amendment right to provide topless dancing and, accordingly, enjoined plaintiff from providing adult entertainment in violation of ordinance 260. The trial court refused to address the constitutionality of ordinance 291-A, finding that issue controlled by the decision in the related federal action and that res judicata barred relitigation of the issue in the state case. Finally, believing that the 1984 covenant had been executed in compliance with ordinance 291 (the predecessor to ordinance 291-A), the trial court ruled that the covenant was unenforceable, because ordinance 291-A had been declared unconstitutional by the federal court.

Subsequently, on February 4, 1994, the trial court granted rehearing of the "covenant" issue after determining that it had factually erred in finding that the covenant was executed in compliance with ordinance 291. Addressing the merits of the issue, the trial court determined that the 1984 covenant was valid and enforceable, but declined to award injunctive relief for the reason that the covenant, by its terms, pro-

vided an adequate remedy at law, i.e., authority to seek cancellation of the entertainment permit. An order incorporating these rulings was entered on March 4, 1994, and plaintiff subsequently filed an appeal by right from that order (Docket No. 173879).

Thereafter, while the appeal of the related federal court decision regarding the constitutionality of ordinance 291-A was still pending, the parties in the federal action jointly moved to vacate the federal court decision, which was granted on May 27, 1994, thereby removing the res judicata effect of the federal court decision. The parties then resubmitted the issue of the constitutionality of ordinance 291-A to the trial court in this case. On November 14, 1994, the trial court issued its decision declaring ordinance 291-A unconstitutionally overbroad and, therefore, unenforceable. Defendant appealed that decision as of right (Docket No. 181802). The appeal was subsequently consolidated with plaintiff's appeal in Docket No. 173879.

## II. CONSTITUTIONALITY OF ORDINANCE 260

### A

Ordinance 260 regulates four types of adult uses, namely, adult retail stores, adult theaters, adult minitheaters, and cabarets. Plaintiff's proposed use of its premises is encompassed within the definition of "cabaret," which is defined as "an establishment for entertainment which features topless dancers, strippers, male or female impersonators or similar entertainers." Ordinance 260 regulates adult uses in two primary respects. First, the ordinance restricts adult uses to B-3 general business use zoning districts. Second, the ordinance attempts to disperse adult uses

throughout the B-3 districts by imposing certain spacing requirements, which may be waived under certain circumstances. The ordinance provides, in relevant part:

These [adult] uses, being recognized as having serious objectionable operational characteristics, particularly when concentrated or located with [sic] the same geographical area, are subject to the following conditions in order to insure that the surrounding area will not experience deleterious, blighting or downgrading influences:

(1) Vehicular ingress and egress shall be directly onto a major thorofare [sic] having an existing or planned right-of-way of at least one hundred twenty (120) feet in width and shall have one property line abutting said thorofare.

(2) The use shall not be located within a planned shopping center as defined in Section 202-78 of this Ordinance.

(3) In no instance shall the use be located closer than 1,000 feet from any church, park, school, playground or school bus stop.

(4) In no instance shall the use be located within one thousand (1,000) feet of any other such use, existing or proposed, as listed in Section 1203-1-1 of this Ordinance, unless the Planning Commission and Township shall find that the use:

(a) Will not be contrary to any conservation, rehabilitation or similar program within the area;

(b) Will not contribute as a blighting influence to the surrounding area;

(c) Will not contribute to a concentration of these types of uses in the area, thereby encouraging the development of a "skid row" type area.

(5) In no instance shall any of the above uses be located closer than five hundred (500) feet to residentially zoned land. If two (2) or more of the above uses are conducted as one (1) business, then said business shall be located a minimum of seven hundred fifty (750) feet from any residentially zoned land.

(a) The Planning Commission and Township Board may waive this requirement upon the presentation to the Township of petitions, which contain signatures and addresses of at least fifty-one (51) percent of the occupants of residences within the required minimum distance, which indicate no objection to the location of the proposed use.

On appeal, plaintiff argues that ordinance 260, by limiting adult uses to B-3 zoning districts and by imposing spacing requirements on the location of such uses, impermissibly infringes on constitutionally protected activity under the First Amendment and Article 1, § 5 of our state constitution.[2]

B

First, we reject defendant's claim that plaintiff's challenge regarding the constitutionality of ordinance 260 is not properly before this Court. Noting that ordinance 260 permits adult uses, including topless dancing, in B-3 general business use zoning districts, defendant argues that plaintiff, as an I-2 general industrial property owner, is barred from challenging the constitutionality of the ordinance because plaintiff never sought to have its property rezoned to B-3 status. We disagree.

The exhaustion of remedies requirement does not apply to a facial challenge to a zoning ordinance. *Paragon Properties Co v Novi*, 452 Mich 568, 577; 550 NW2d 772 (1996); *Countrywalk Condominiums, Inc v Orchard Lake Village*, 221 Mich App 19, 22; 561

---

[2] US Const, Am I states that "Congress shall make no law . . . abridging the freedom of speech." Similarly, Const 1963, art 1, § 5 provides that "[e]very person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press."

NW2d 405 (1997); *West Bloomfield Twp v Karchon*, 209 Mich App 43, 47; 530 NW2d 99 (1995). A facial challenge is one that attacks the very existence or enactment of the ordinance; it alleges that the mere existence and threatened enforcement of the ordinance adversely affects all property regulated in the market as opposed to a particular parcel. *Paragon Properties Co, supra* at 576-577; *Lake Angelo Associates v White Lake Twp*, 198 Mich App 65, 72; 498 NW2d 1 (1993).

Here, plaintiff's amended complaint alleges that ordinance 260 is unconstitutional because it was enacted "without any evidence of a legitimate governmental purpose that would be served by its enactment." Further, plaintiff alleges that the purpose and effect of the ordinance is to exclude totally constitutionally protected "adult uses" in Clinton Township. These allegations facially challenge the constitutionality of the ordinance. Moreover, plaintiff's assertion that ordinance 260 is unconstitutional "as applied" to prohibit plaintiff from presenting topless entertainment at its business location rests on the contention that ordinance 260 is unconstitutionally restrictive in prohibiting adult uses on *any* industrially zoned property. In this context, such a claim involves a challenge to the facial validity of the ordinance. Accordingly, plaintiff was not required first to seek rezoning, and the issue is ripe for judicial review. *Countrywalk Condominiums, Inc, supra.*

C

Although a trial court's ruling on a constitutional challenge to a zoning ordinance is reviewed de novo, this Court accords considerable deference to the trial

court's factual findings, and those findings will not be disturbed unless we would have reached a different result had we occupied the trial court's position. *Guy v Brandon Twp*, 181 Mich App 775, 778-779; 450 NW2d 279 (1989).

At the outset, we reject plaintiff's suggestion that the Michigan Constitution provides greater protection than that afforded under the First Amendment. Our Supreme Court has interpreted the rights to free speech and association under the First Amendment and Const 1963, art 1, § 5 as coextensive. *Woodland v Michigan Citizens Lobby*, 423 Mich 188, 202; 378 NW2d 337 (1985); *Michigan Up & Out of Poverty Now Coalition v Michigan*, 210 Mich App 162, 168-169; 533 NW2d 339 (1995). Plaintiff has not identified a compelling reason for interpreting the Michigan Constitution more broadly than the federal constitution. *Sitz v Dep't of State Police*, 443 Mich 744, 763; 506 NW2d 209 (1993). Therefore, we will review plaintiff's challenge to ordinance 260 in accordance with federal authority construing the First Amendment.

Nonobscene, erotic entertainment, such as topless dancing, is a form of protected expression under the First Amendment, but enjoys less protection than other forms of First Amendment expression, such as political speech. *Barnes v Glen Theatre, Inc*, 501 US 560, 565-566; 111 S Ct 2456; 115 L Ed 2d 504 (1991); *Woodall v El Paso*, 49 F3d 1120, 1122 (CA 5, 1995); *Christy v Ann Arbor*, 824 F2d 489, 492 (CA 6, 1987).

The use of zoning and licensing ordinances to regulate exhibitions of "adult entertainment" is widely recognized. *Young v American Mini Theatres, Inc*, 427 US 50; 96 S Ct 2440; 49 L Ed 2d 310 (1976); *Ferndale v Ealand (On Remand)*, 92 Mich App 88, 92; 286

NW2d 688 (1979). As the United States Supreme Court stated in *Young, supra* at 62:

> The mere fact that the commercial exploitation of material protected by the First Amendment is subject to zoning and other licensing requirements is not sufficient reason for invalidating these ordinances.

An ordinance that does not suppress protected forms of sexual expression, but which is designed to combat the undesirable secondary effects of businesses that purvey such activity, is to be reviewed under the standards applicable to content-neutral time, place, and manner regulations. *Renton v Playtime Theatres, Inc*, 475 US 41, 49; 106 S Ct 925; 89 L Ed 2d 29 (1986). Content-neutral time, place, and manner regulations are acceptable as long as they are designed to serve a substantial government interest and do not unreasonably limit alternative avenues of communication. *Id.* at 47.

Here, ordinance 260 by its terms does not ban topless dancing, but, rather, merely restricts the location of such forms of adult entertainment. The aim of the ordinance is not to suppress such activity, but to combat the secondary effects of adult uses on surrounding areas "in order to insure that the surrounding areas will not experience deleterious, blighting or downgrading influences." Thus, as the trial court found, the ordinance may be viewed as a content-neutral time, place, and manner restriction on expressive conduct. *Renton, supra* at 48-49. Accordingly, we must determine whether the ordinance is designed to serve a substantial governmental interest and whether it allows for reasonable alternative avenues of com-

munication. We hold that the ordinance satisfies both standards.

In *Renton, supra,* a city ordinance prohibited any adult motion picture theater from locating within one thousand feet of any residential zone, single- or multiple-family dwelling, church, or park and within one mile of any school. The Supreme Court found that the ordinance was designed to serve a substantial governmental interest " 'because a city's interest in attempting to preserve the quality of urban life is one that must be accorded high respect.' " *Id.* at 50, quoting *Young, supra* at 71. This same interest is at stake here. Ordinance 260 expressly identifies the objective of protecting neighborhoods from the "serious objectionable operational characteristics [of adult uses], particularly when concentrated or located with [sic] the same geographical area," thus insuring that surrounding areas "will not experience deleterious, blighting or downgrading influences." Moreover, we conclude that the ordinance is adequately tailored to meet this objective. While the ordinance prohibits adult businesses from locating within one thousand feet of each other in order to minimize the harmful effects caused by multiple adult uses in a given area, this prohibition may be waived upon a showing that a second adult use (1) will not be contrary to any conservation, rehabilitation or similar program within the area, (2) will not contribute as a blighting influence to the surrounding area, and (3) will not contribute to a concentration of these types of uses in the area.

We reject plaintiff's claim that defendant failed to justify a need for ordinance 260 because, at the time the ordinance was enacted, not a single adult use existed in the township and because defendant never

conducted its own independent study regarding the impact of adult uses in the community. In *Renton,* as in this case, the adult use ordinance was enacted before any such uses existed in the city and was enacted without any study specifically relating to that city's particular needs or problems. The city there relied on the experiences of, and studies produced by, other cities as justification for the ordinance. The Supreme Court held that these circumstances did not affect the validity of the ordinance:

> We hold that Renton was entitled to rely on the experiences of Seattle and other cities . . . in enacting its adult theater zoning ordinance. The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses. [*Id.* at 51-52.]

Testimony in this case revealed that township officials considered studies regarding the impact of the adult entertainment business in Detroit, as well as studies produced by other cities such as Austin, Amarillo, and Beaumont, Texas, and Indianapolis, Indiana. The trial court properly ruled that defendant could rely on studies produced by other cities and was not required to expend tax dollars on its own empirical studies to justify the enactment of ordinance 260.

Next, we reject plaintiff's claim that ordinance 260 is unconstitutional because it fails to allow for reasonable alternative avenues of communication. Evidence presented below revealed that Clinton Township occupies approximately 28.1 square miles or 17,991 acres, of which approximately 222 acres are

zoned for B-3 use. Further, the evidence revealed that twelve sites, comprising approximately 50.97 acres, can support adult uses consistent with the requirements of ordinance 260. Moreover, the available sites are located in seven different geographical B-3 zoning districts, which are dispersed throughout the township and are capable of supporting eight or nine adult uses simultaneously consistent with the spacing requirements of the ordinance.[3]

Plaintiff advances several arguments in support of its claim that ordinance 260 should be found unconstitutional as unduly restricting access to protected forms of sexual expression, none of which we find persuasive.

First, plaintiff argues that ordinance 260 is similar in effect to other ordinances that have been declared unconstitutional as being unduly restrictive. However, we find that the cases relied upon by plaintiff are factually distinguishable. In *Ferndale, supra,* the City of Ferndale enacted a zoning ordinance requiring adult motion picture theaters to be established in areas zoned C-2, general business, but not within one thousand feet of any building containing a residential dwelling or rooming unit. Evidence in that case revealed that no location in the city met the requirements of the ordinance. Because the ordinance totally suppressed access to protected speech, this Court held the ordinance unconstitutional. *Ferndale, supra* at 92-94. Here, unlike the City of Ferndale's ordinance, defendant's ordinance does not have the effect

---

[3] Plaintiff stipulated below that at least eight sites could simultaneously support adult uses consistent with the spacing requirements of the ordinance. Defendant contended there were actually nine.

of totally precluding the establishment of adult uses in the township.

Next, in *CLR Corp v Henline*, 702 F2d 637 (CA 6, 1983), the City of Wyoming, Michigan, enacted an ordinance that required adult bookstores, adult movie theaters, and massage parlors to be located in B-2 business districts and prohibited their location within five hundred feet of any church, school, or residence and one thousand feet from any other restricted use. The Sixth Circuit Court of Appeals found the ordinance unconstitutional because its effect was to permit only two to four restricted uses in a half-mile strip of the city, thereby severely restricting the opportunity for First Amendment free expression. *Id.* at 639. Again, this case is distinguishable. Not only does defendant's ordinance allow for a greater number of locations, but the available locations are dispersed throughout the township as opposed to being confined to a single, small section of the community. Thus, defendant's ordinance is not nearly as restrictive as the City of Wyoming's ordinance.

Finally, in *Christy, supra*, Ann Arbor enacted an ordinance requiring adult businesses to be located in areas zoned C2A and prohibiting such businesses from locating within seven hundred feet of certain other districts or within seven hundred feet of another adult business. Contrary to plaintiff's argument, however, the court in *Christy* did not declare the ordinance unduly restrictive, but merely remanded for a determination of that question after concluding that the trial court's legal analysis of the ordinance was erroneous. *Christy, supra* at 492. Hence, *Christy* provides little support for plaintiff's position.

Plaintiff also argues that ordinance 260 should be found unduly restrictive because, while twelve sites may support adult usage, most of the sites are occupied by other businesses and only two sites are vacant. However, the fact that available sites are currently occupied by other businesses is not relevant in determining how many sites the ordinance leaves open for adult uses. As the Supreme Court explained in *Renton, supra* at 54:

> That respondents must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees, does not give rise to a First Amendment violation. And although we have cautioned against the enactment of zoning regulations that have "the effect of suppressing, or greatly restricting access to, lawful speech," we have never suggested that the First Amendment compels the Government to ensure that adult theaters, or any other kinds of speech-related businesses for that matter, will be able to obtain sites at bargain prices. [Citation omitted.]

Similar sentiments are expressed in *Woodall, supra* at 1124:

> [T]he fact that a site may not be commercially desirable does not render it unavailable. It is not relevant that a relocation site will result in lost profits, higher overhead costs, or even prove commercially unfeasible for an adult business. There is no requirement that an adult business be able to obtain existing commercial sites at low cost and with market access to ensure its prosperity. As we have stated time and again, commercial viability is not a relevant consideration. [Citations omitted.]

Plaintiff also argues that ordinance 260 does not allow for reasonable alternative avenues of communication because the number of locations, or percent-

age of land, made available for adult usage is less
than the amount determined to be available in other
cases wherein adult use zoning ordinances have been
upheld. However, none of the cited cases identify a
minimum number of locations, or minimum percent-
age of land, that must be made available for adult
usage. Each city is unique, often differing significantly
in terms of its character, geography, population, and
other circumstances, from another city. Indeed, plain-
tiff cites several cases involving larger urban areas,
distinctly different from the community in this case.
See, e.g., *Young, supra*; *Alexander v Minneapolis*, 928
F2d 278 (CA 8, 1991); *15192 Thirteen Mile Road, Inc
v City of Warren*, 626 F Supp 803 (ED Mich, 1985).
Because each city presents its own unique set of cir-
cumstances, "each case must be decided according to
its specific facts." *Christy, supra* at 491. In this case,
the trial court examined the individual characteristics
of Clinton Township and reasoned as follows in deter-
mining that ordinance 260 does not unreasonably
limit alternative avenues of communication:

> Considering the varied needs of the Clinton Township
> community, the Court is not persuaded the existence of 12
> potential cabaret sites within Clinton Township is anything
> more than an incidental restriction on Jott, Inc.'s First
> Amendment freedoms. . . .
>
> Jott Inc.'s argument that a .3% land availability percentage
> demonstrates Clinton Township has effectively denied Jott
> a reasonable opportunity to open and operate a topless bar
> in the Township is unpersuasive. Clinton Township encom-
> passes only 28.11 square miles, and includes numerous zon-
> ing districts designed to accomplish specific land uses . . . .
> According to Charter Township of Clinton's "Master Plan
> For Future Use," 44% of its 17,991 acres, or 7,916 acres, has
> been developed into residential use, while 27% (4,858 acres)
> has been developed for public uses such as schools, parks,

and government service buildings. Expressed as a percentage of available Clinton Township land that has not already been developed into a residential or public use (a total of 12,774 acres), the 50.97 acres available for an "adult entertainment" site represents nearly 1% of Clinton Township's remaining land including land specifically zoned for parking, special purposes such as nursing homes and hospitals, a regional center, and floodways. Based upon the limited amount of land available to Clinton Township, the Court finds that 12 sites totaling 50.97 acres represents a reasonable opportunity under Ordinance 260 for Jott, Inc. to open and operate a topless bar within the Township. Ordinance 260 is an incidental restriction on Jott, Inc.'s First Amendment freedoms that is no greater than is essential to the furtherance of Clinton Township's varied and substantial governmental interests.

We adopt the reasoning of the trial court and hold that ordinance 260 affords plaintiff a reasonable opportunity to open and operate an adult establishment featuring topless dancing.

Finally, we turn to plaintiff's claim that ordinance 260 should be declared unconstitutional insofar as it prohibits adult uses from locating in industrially zoned areas. This claim is predicated on plaintiff's observation that a primary objective of ordinance 260 is to address the secondary effects of adult uses on residentially zoned property. Because this concern is not applicable to industrially zones areas, plaintiff argues there is no justification for excluding adult uses in such areas.

It may well be, as plaintiff contends, that locating an adult business in an industrially zoned area will cause little negative impact on the surrounding area. However, plaintiff's argument ignores the principle that " '[z]oning is a legislative function that cannot constitutionally be performed by a court.' " *Schwartz*

*v Flint*, 426 Mich 295, 307; 395 NW2d 678 (1986), quoting *Daraban v Redford Twp*, 383 Mich 497, 503; 176 NW2d 598 (1970).[4] The United States Supreme Court has explained that where an ordinance regulating adult uses does not otherwise offend the constitution, as in this case, it is not the function of the courts to appraise the method chosen by a municipality to further its interests. *Young, supra* at 71; *Renton, supra* at 52. In this case, testimony below justified the township's decision to exclude various commercial uses, including adult uses, from industrially zoned areas. Specifically, the testimony revealed that the township, in the early 1990s, was concerned that only two percent of its land was zoned for industrial use. The township was desirous of increasing the amount of industrially zoned land because industrial land uses tend to provide more jobs for the community, they generate higher tax revenues, and they generally demand fewer services than commercial uses. Accordingly, the township revised its master plan to increase the percentage of industrially zoned property and to eliminate various commercial uses from industrial districts.

Plaintiff relies on *Morscott v City of Cleveland*, 781 F Supp 500 (ND Ohio, 1990), in which the court held

---

[4] As the Court in *Schwartz* observed:

> [T]he judiciary's zoning track record is not good. . . . Zoning, by its nature, is most uniquely suited to the exercise of the police power because of the value judgments that must be made regarding aesthetics, economics, transportation, health, safety, and a community's aspirations and values in general. By the same token, zoning, which requires linedrawing that oftentimes "by its nature [is] arbitrary," [*Delta Charter Twp v*] *Dinolfo*, [419 Mich 253,] 269; [351 NW2d 831 (1984)], is uniquely unsuited to the judicial arena. [426 Mich 313.]

that an ordinance banning adult uses in industrially zoned areas was invàlid. However, the decision in *Morscott* was premised on the court's determination that the ordinance was adopted without any objective factual information justifying the decision. Therefore, the case is distinguishable.

Accordingly, for the foregoing reasons, we affirm the trial court's decision holding that ordinance 260 is a constitutionally valid time, place, and manner restriction governing the provision of adult uses in Clinton Township.

### III. CONSTITUTIONALITY OF ORDINANCE 291-A

Ordinance 291-A, enacted in November 1992, prohibits "nudity" in "any establishment licensed or subject to licensing by the Michigan Liquor Control Commission." The ordinance defines "nudity" as follows:

> Nudity shall be defined to be the exposure by view of persons, any of the following body parts, either directly or indirectly, including but not limited to exposure, see through clothing articles or body stockings:
>
> (a) The whole or part of the pubic region;
>
> (b) The whole or part of the anus;
>
> (c) The whole or part of the buttocks;
>
> (d) The whole or part of genitals;
>
> (e) The breast area including nipple, or more than one-half of the area of the breast;
>
> (f) The leg area or hips more than six (6) inches above an area six (6) inches below the inseam, measured from the crotch;
>
> (g) The stomach area below the navel or more than three (3) inches above an area three (3) inches below the breast.

A person who violates ordinance 291-A is guilty of a misdemeanor, punishable by imprisonment for not

more than ninety days in jail or a fine of not more than $500 or both.

The trial court analyzed the constitutionality of ordinance 291-A using the four-part test enunciated in *Barnes, supra,* and *United States v O'Brien,* 391 US 367; 88 S Ct 1673; 20 L Ed 2d 672 (1968), for evaluating restrictions on expressive activity protected by the First Amendment. Under the *Barnes-O'Brien* test, a government regulation burdening expressive activity is sufficiently justified if: (1) it is within the constitutional power of the government; (2) it furthers an *important or substantial* governmental interest; (3) the governmental interest is unrelated to the suppression of free expression; and (4) the incidental restriction on alleged First Amendment freedoms is no greater than essential to the furtherance of that interest. *Barnes, supra* at 567; *O'Brien, supra* at 376-377. Focusing primarily on subparts f and g of the definition of nudity, the trial court observed that "a person walking into a MLCC licensed convenience store wearing a bathing suit . . . would be guilty of violating ordinance 291-A." In view of this circumstance, the trial court concluded that the "governmental restrictions in ordinance 291-A are, on their face, greater than are essential to Clinton Township's substantial interest in prohibiting nudity in MLCC licensed establishments." Accordingly, the trial court ruled that ordinance 291-A was unconstitutionally overbroad and thus "void and unenforceable as a matter of constitutional law." The trial court did not discuss the applicability of the Twenty-first Amendment in its analysis.

On appeal, defendant argues that the trial court erred in analyzing ordinance 291-A under the stricter

*Barnes-O'Brien* standard applicable to traditional First Amendment concerns, as opposed to a relaxed "rational basis" standard applicable to regulations enacted under the authority of the Twenty-first Amendment. We agree.

The Twenty-first Amendment confers upon states broad powers over the sale of alcohol.[5] In *California v LaRue*, 409 US 109; 93 S Ct 390; 34 L Ed 2d 342 (1972), the Supreme Court rejected challenges under the First and Fourteenth Amendments to regulations prohibiting certain sexually explicit live entertainment or films in establishments licensed to sell alcoholic beverages, notwithstanding that the regulations proscribed conduct within the limits of the First Amendment protection of freedom of expression. In sustaining the regulations, the Supreme Court drew a distinction between regulations that censor dramatic performance in the theater and regulations that only prohibit such exposure in establishments where liquor is sold by the drink:

> The substance of the regulations struck down prohibits licensed bars or nightclubs from displaying, either in the form of movies or live entertainment, "performances" that partake more of gross sexuality than of communication. While we agree that at least some of the performances to which these regulations address themselves are within the limits of the constitutional protection of freedom of expression, the critical fact is that California has not forbidden these performances across the board. It has merely proscribed such performances in establishments that it licenses to sell liquor by the drink.

---

[5] US Const, Am XXI provides in pertinent part: "The transportation or importation into any State . . . for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

\*     \*     \*

The Department's conclusion, embodied in these regula-
tions, that certain sexual performances and the dispensa-
tion of liquor by the drink ought not to occur at premises
that have licenses was not an irrational one. Given the
added presumption in favor of the validity of the state regu-
lation in this area that the Twenty-first Amendment
requires, we cannot hold that the regulations on their face
violate the Federal Constitution. [*Id.* at 118-119.]

The holding in *LaRue*, that the broad power of the
states to regulate the sale of liquor may outweigh any
First Amendment interest in nude dancing, was reaf-
firmed in *Doran v Salem Inn, Inc*, 422 US 922; 95 S
Ct 2561; 45 L Ed 2d 648 (1975), and *New York State
Liquor Authority v Bellanca*, 452 US 714; 101 S Ct
2599; 69 L Ed 2d 357 (1981).[6] In *Bellanca, id.* at 718,
the Supreme Court upheld a ban on topless dancing
in liquor-licensed establishments even though topless

---

[6] We reject plaintiff's claim, asserted at oral argument, that the holding
in *LaRue* was recently overruled by the Supreme Court in *44 Liquormart,
Inc v Rhode Island*, ___ US ___; 116 S Ct 1495; 134 L Ed 2d 711 (1996).
Unlike this case, *44 Liquormart* was a "commercial speech" case. It
involved a challenge to a state law banning advertisement of retail liquor
prices. The Supreme Court expressly noted that laws suppressing speech
are subject to greater constitutional scrutiny than laws suppressing forms
of conduct. Although the Supreme Court did retreat somewhat from its
position in *LaRue*, it did so only insofar as *LaRue* advanced the proposi-
tion that the constitutional prohibition against laws abridging freedom of
speech embodied in the First Amendment may be shielded from attack by
virtue of the Twenty-first Amendment. Indeed, the court expressly stated
that it was not questioning its holding in *LaRue*. The Court noted that
*LaRue*, unlike the case before it, was not a commercial speech case, but
instead concerned the regulation of nude dancing where alcohol was
served. The Court expressly stated that its analysis in *LaRue* would have
yielded the same result, independent of the Twenty-first Amendment, in
light of the state's ample inherent powers to prohibit the sale of alcoholic
beverages in inappropriate locations and to restrict the kind of sexual
activities described in *LaRue*. For these reasons, we find that *44
Liquormart* does not affect the disposition of this case.

dancing did not involve the type of "gross sexuality" regulated in *LaRue*:

> Whatever artistic or communicative value may attach to topless dancing is overcome by the State's exercise of its broad powers arising under the Twenty-first Amendment. Although some may quarrel with the wisdom of such legislation and may consider topless dancing a harmless diversion, the Twenty-first Amendment makes that a policy judgment for the state legislature, not the courts.

In *Felix v Young*, 536 F2d 1126, 1132 (CA 6, 1976), the Sixth Circuit Court of Appeals succinctly articulated the Supreme Court's holding in *LaRue* regarding the interplay of the Twenty-first Amendment and the proper analysis to be applied in reviewing regulations restricting expressive activity under the First Amendment:

> A state may promulgate broad prophylactic rules banning sexually explicit entertainment at licensed bars and cabarets so long as the regulations represent a reasonable exercise of a state's Twenty-first Amendment authority and are rationally related to the furtherance of legitimate state interests. However, if the state's authority to control liquor traffic is not implicated in a regulatory plan which impinges on free expression, the regulation must withstand stricter scrutiny.

In this case, there is no dispute that ordinance 291-A does not prohibit all public nudity. Rather, its scope is limited only to establishments that serve liquor. Nonetheless, plaintiff argues that the ordinance cannot properly be viewed as a regulation enacted under the authority of the Twenty-first Amendment because it was enacted by a local unit of government, not the state, and because, in Michigan, the LCC has been

given exclusive authority to regulate liquor. We disagree.

Const 1963, art 4, § 40 declares that the Legislature may by law establish a liquor control commission, which, subject to statutory limitations, shall exercise complete control of the alcoholic beverage traffic within this state. Consistent with this constitutional authorization, the Legislature, under the Michigan Liquor Control Act, MCL 436.1 *et seq.*; MSA 18.971 *et seq.* created the Liquor Control Commission, giving it the sole right, power, and duty to control the alcoholic beverage traffic within the state, except as otherwise provided in the act, MCL 436.1(2); MSA 18.971(2). However, this grant of authority does not preclude local communities from controlling alcoholic beverage traffic within their boundaries in the proper exercise of their police powers. *Bundo v Walled Lake*, 395 Mich 679, 700-701; 238 NW2d 154 (1976); *Mutchall v Kalamazoo*, 323 Mich 215, 223-225; 35 NW2d 245 (1948).

In *Johnson v Liquor Control Comm*, 266 Mich 682, 685; 254 NW 557 (1934), the Supreme Court stated:

> The very nature of the liquor business is such that local communities, as a matter of policy, should be permitted to regulate the traffic within their own bounds in the proper exercise of their police powers, subject to the larger control of the liquor control commission as to those matters wherein the commission is given exclusive powers by the legislature.

In *Tally v Detroit*, 54 Mich App 328; 220 NW2d 778 (1974), this Court upheld the constitutionality of certain licensing and identification card requirements of a Detroit ordinance that regulated topless dancing in establishments licensed to serve alcoholic beverages.

The Court observed that, "[d]ue to the nature of the liquor business, the City of Detroit has the power to regulate the traffic within its own bounds through the exercise of its police powers, subject to the authority of the Liquor Control Commission only when a conflict arises." *Id.* at 334. Finding no conflict with the commission's regulations, the Court held that the ordinance in question was a reasonable exercise of Detroit's Twenty-first Amendment authority to regulate local liquor traffic. *Id.* at 337-338.

Similarly, in *Felix, supra,* the Sixth Circuit Court of Appeals upheld, under the authority of the Twenty-first Amendment, the constitutionality of a Detroit ordinance regulating the location of cabarets:

> We find that the Detroit ordinance establishing licensing requirements for Group "D" Cabarets was enacted by authority of the Twenty-first Amendment and so the relaxed standard of review in *California v LaRue,* [*supra,*] is applicable. Accord, *Paladino v Omaha,* 471 F2d 812, 814 (CA 8, 1972). Although Michigan has a liquor control commission which is ultimately responsible for the regulation of liquor traffic in the state, its jurisdiction is not exclusive. The Michigan Supreme Court has sanctioned the enactment of municipal ordinances regulating local traffic in liquor. See e.g., *Mutchall,* [*supra*]. . . . If the provisions restricting the location of Group "D" Cabarets bear a reasonable relation to legitimate municipal interests, the facial validity of the ordinances must be upheld. [536 F2d 1132-1133.]

Accordingly, we conclude that defendant has the authority under the Twenty-first Amendment to regulate the traffic of liquor "within its own bounds through the exercise of its police powers, subject to the authority of the Liquor Control Commission only when a conflict arises." *Tally, supra,* at 334.

Acting under the authority of MCL 436.7; MSA 18.977, the LCC has adopted the following regulation regarding nudity in liquor-licensed premises:

> An on-premises licensee shall not allow in or upon the licensed premises a person who exposes to public view the pubic region, anus, or genitals or who displays *other types of nudity prohibited by statute or local ordinance.* [1980 AACS, R 436.1409(1) (emphasis added).]

The foregoing regulation effectively prohibits "bottomless" nudity in all liquor-licensed establishments, as well as other types of nudity prohibited by statute or local ordinance. Because the LCC's regulations explicitly recognize the authority of local governmental units to prohibit, apart from "bottomless" nudity, other types of nudity in liquor-licensed establishments, we find no conflict between ordinance 291-A and the regulations of the LCC.

Plaintiff argues, however, that the definition of nudity contained in ordinance 291-A may not be sustained because it is preempted by the definition of "public nudity" contained in the township ordinance act, MCL 41.181; MSA 5.45(1). We disagree. At the time ordinance 291-A was enacted, MCL 41.181; MSA 5.45(1) provided:

> (1) The township board of a township may . . . adopt ordinances regulating the public health, safety, and general welfare of persons and property, including, but not limited to . . . the regulation or prohibition of public nudity . . . [.]
>
> *       *       *
>
> (3) As used in this section, "public nudity" means knowingly or intentionally displaying in a public place, or for payment or promise of payment by any person including, but not limited to, payment or promise of payment of an

admission fee, any individual's genitals or anus with less than a fully opaque covering.[7]

In discussing the question of preemption, our Supreme Court in *People v Llewellyn*, 401 Mich 314, 322; 257 NW2d 902 (1977), stated:

> A municipality is precluded from enacting an ordinance if 1) the ordinance is in direct conflict with the state statutory scheme, or 2) if the state statutory scheme pre-empts the ordinance by occupying the field of regulation which the municipality seeks to enter, to the exclusion of the ordinance, even where there is no direct conflict between the two schemes of regulation.

MCL 41.181; MSA 5.45(1) addresses a township's authority to regulate or prohibit public nudity in general. Defendant, through ordinance 291-A, is not attempting to regulate public nudity per se, but, rather, the circumstances under which liquor may be trafficked within its boundaries. Ordinance 291-A, by its terms, is applicable only to establishments holding liquor licenses; it has no applicability to public places where liquor is not sold. That preemption was not intended in this context is supported by the fact that the Legislature has conferred control over alcoholic beverage traffic in this state on the LCC, which, pursuant to authority granted to it by MCL 436.7; MSA 18.977, has adopted Rule 436.1409(1), explicitly recognizing the authority of local governmental units to

---

[7] The statute was amended by 1994 PA 315 to include within the definition of "public nudity" the display of "a female individual's breast with less than a fully opaque covering of the nipple and areola," and to expressly exclude from the definition of "public nudity": (1) "[a] woman's breastfeeding of a baby whether or not the nipple or areola is exposed during or incidental to the feeding"; (2) material defined in MCL 752.362; MSA 28.579(362); and (3) material defined in MCL 722.673; MSA 25.254(3).

prohibit different types of nudity in establishments holding liquor licenses.

Moreover, MCL 41.181; MSA 5.45(1) expressly provides that a township's authority to adopt ordinances regulating "the public health, safety, and general welfare of persons and property" is not limited to those activities expressly mentioned therein, such as "the regulation or prohibition of public nudity." As discussed previously, it has long been recognized that local communities possess "extremely broad" powers to regulate alcoholic beverage traffic within their bounds through the exercise of their general police powers, subject to the authority of the LCC when a conflict arises. *Bundo, supra* at 700; *Tally, supra* at 334. Thus, the power to adopt an ordinance like ordinance 291-A, which involves such a regulation, is derived from the general grant of authority to adopt ordinances affecting "the public health, safety, and general welfare of persons and property." Conversely, the specific grant of authority to adopt an ordinance regulating or prohibiting public nudity should not be viewed as a limitation of the township's authority to regulate the local traffic of alcohol in a manner consistent with the authority of the LCC.

Accordingly, we conclude that the definition of nudity contained in ordinance 291-A is neither preempted by nor in conflict with MCL 41.181(3); MSA 5.45(1)(3). We must now decide whether ordinance 291-A, and the definition of nudity contained therein, is rationally related to a legitimate governmental interest. *LaRue, supra.*

Testimony below indicated that ordinance 291-A was enacted in order to eradicate the effects of "undesirable behavior" stemming from a combination

of alcohol and nudity. The trial court did not question, nor do we, the existence of a legitimate governmental interest in prohibiting nudity in establishments holding liquor licenses. In *Bellanca, supra,* the Supreme Court upheld a ban on topless dancing in establishments holding liquor licenses based on a legislative finding that

"[n]udity is the kind of conduct that is a proper subject for legislative action as well as regulation by the State Liquor Authority as a phase of liquor licensing. It has long been held that sexual acts and performances may constitute disorderly behavior within the meaning of the Alcoholic Beverage Control Law . . . .

"Common sense indicates that any form of nudity coupled with alcohol in a public place begets undesirable behavior." [452 US 717-718 (citation omitted).]

Furthermore, we cannot conclude that subparts a through e of the ordinance's definition of nudity, describing the pubic region, anus, buttocks, genitals, and breast area, are irrational and not reasonably related to the objective of combating the undesirable social effects stemming from a combination of alcohol and the public exposure of those body parts. However, like the trial court, we are troubled by the scope of the definition of nudity as outlined in subparts f and g of the ordinance's definition of nudity, which describe portions of the leg area or hips and stomach. As the trial court observed, subparts f and g would allow application of the ordinance to persons clothed in forms of attire that are commonplace in today's society and which are not generally associated with traditional concepts of "nudity." Moreover, while we have no problem inferring that pubic exposure of the body parts described in subparts a through e of

the ordinance, coupled with alcohol, may beget undesirable behavior, we are unable to make a similar inference with respect to public exposure of the body parts described in subparts f and g, inasmuch as those subparts describe body parts not generally associated with traditional concepts of nudity and because exposure of those body parts may be incidental to common forms of attire. Nor do we find any evidence in the record to support a conclusion that public exposure of the body parts described in subparts f and g, coupled with alcohol, may beget undesirable behavior.

However, we disagree with the trial court's conclusion that these invalid portions cause the entire ordinance to be unconstitutional. Ordinance 291-A contains a severability clause that states:

> Every word, sentence and claus [sic] of this ordinance is hereby declared to be severable and if any word, sentence, clause, provision or part thereof is declared to be invalid by a court of competent jurisdiction, the remaining provisions shall not be affected.

In *Pletz v Secretary of State*, 125 Mich App 335, 375; 336 NW2d 789 (1983), this Court stated:

> The doctrine of severability holds that statutes should be interpreted to sustain their constitutionality when it is possible to do so. Whenever a reviewing court may sustain an enactment by proper construction, it will uphold the parts which are separable from the repugnant provisions. To be capable of separate enforcement, the valid portion of the statute must be independent of the invalid sections, forming a complete act within itself. After separation of the valid parts of the enactment, the law enforced must be reasonable in view of the act as originally drafted. One test applied is whether the law-making body would have passed the

statute had it been aware that portions therein would be declared to be invalid and, consequently, excised from the act.

Subparts f and g of the ordinance's definition of nudity are easily severable and do not affect adversely the remainder of the ordinance. Rather, the remaining, valid portions are sufficiently independent and complete and, also, are reasonable in view of the intent of the ordinance as originally enacted. Severance is also consistent with the intent of the township as expressed in the ordinance itself. Accordingly, we hold that subparts f and g of the definition of nudity contained in ordinance 291-A may be severed, thereby leaving the remainder of the ordinance constitutionally valid and enforceable.

### IV. THE 1984 COVENANT

As discussed previously, in 1984, in exchange for defendant's approval of plaintiff's application to the LCC for an entertainment permit, plaintiff covenanted that it would offer only "wholesome entertainment" and would not offer "any entertainment of a lewd, obscene, or immoral nature including, but not limited to topless performers." Defendant's approval was necessary because an LCC regulation prohibits an establishment holding a liquor license from permitting dancing or other forms of entertainment without a permit from the LCC. 1980 AACS, R 436.1407. The regulation also states that no entertainment permit shall be issued without, inter alia, approval of the local legislative body. *Id.*

On appeal, plaintiff asserts that "the trial court committed fundamental error in enforcing the 1984 'covenant' not to present topless dancing." After the

release of the trial court's decision, the court in *G & V Lounge, Inc v Michigan Liquor Control Comm,* 23 F3d 1071, 1077-1078 (CA 6, 1994), issued a decision holding that covenants of the type involved in this case are unenforceable as a matter of constitutional law. Plaintiff argues that *G & V Lounge* compels the same conclusion respecting its 1984 covenant with defendant. Defendant, while acknowledging that *G & V Lounge* is on point, maintains that the case was incorrectly decided. For reasons hereinafter expressed, we conclude that it is unnecessary to address the validity of the covenant procedure involved here, or to determine whether *G & V Lounge* was correctly decided.

Contrary to what plaintiff suggests on appeal, the trial court here did not declare the 1984 covenant enforceable so as to preclude plaintiff from offering topless dancing. Although defendant affirmatively requested such relief, the trial court expressly rejected that request and refused to prohibit plaintiff from offering topless dancing *on the basis of the covenant.* Defendant has not appealed that portion of the trial court's ruling and, consequently, we are not presented with the question whether a covenant of this type may be used and enforced to preclude a licensee from offering topless entertainment. In this context, this case is distinguishable from *G & V Lounge,* because, in that case, the trial court expressly held that the plaintiff could not prevail in its attempt to offer topless dancing because it had waived its First Amendment rights *by virtue of* its covenant with the city. *G & V Lounge, supra* at 1077.

Although the trial court here did seem to treat the covenant as an enforceable document, it did so only

insofar as it determined that defendant was permitted to seek cancellation of plaintiff's entertainment permit in view of plaintiff's attempt to offer topless dancing. However, defendant's authority to seek cancellation of the entertainment permit does not derive from the covenant, but, rather, from MCL 436.17(3); MSA 18.988(3), which states, in relevant part:

> Upon request of the local legislative body after due notice and proper hearing by the local legislative body and the commission, the commission shall revoke the license of a licensee granted a license to sell alcoholic liquor for consumption on the premises or any permit held in conjunction with that license.

The record indicates that defendant did in fact commence proceedings to revoke plaintiff's entertainment permit in accordance with MCL 436.17(3); MSA 18.988(3). The LCC's written decision revoking plaintiff's entertainment permit likewise cites MCL 436.17(3); MSA 18.988(3) as authority for its decision. Plaintiff has not raised any issue challenging those proceedings per se. In short, there is no basis in the record for concluding that plaintiff has been deprived of an opportunity to present topless dancing, or other forms of adult entertainment, *by virtue of the 1984 covenant.*

Accordingly, under these circumstances, we find it unnecessary to address the validity of the covenant procedure involved in this case.

Affirmed in part and reversed in part.