Griffin, J.
 

 Defendant city of Holland appeals as of right a circuit court judgment declaring subsections 39-348(g) and 39-350(b) of Holland City Ordinance No. 1100 invalid as violative of the Michigan Home Rule City Act, MCL 117.1
 
 et seq.)
 
 MSA 5.2071
 
 et seq.,
 
 and the Michigan zoning enabling act, MCL 125.581
 
 et seq.)
 
 MSA 5.2931
 
 et seq.
 
 The lower court’s judgment also epjoined defendant city from enforcing those two subsections of the ordinance regarding billboards and also declared the offending portions severable, thereby not affecting the validity of the remainder of the ordinance. Plaintiff Adams Outdoor Advertising, Inc., cross appeals the ruling regarding severance.
 

 In its opinion of October 8, 1997, the circuit court summarized its decision as follows:
 

 The City’s goals in respect to the residential zones, historical districts and restored era business and commercial areas are laudable and legitimate. However, the broad prohibition of the zoning sign provisions appear to be a policy and philosophical decision that are the result of an impermissible fiat; a whimsical ipsi [sic] dixit. See generally
 
 Kirk [v
 
 Tyrone Twp], 398 Mich 429 [247 NW2d 848 (1976)]. As such, this court rules that Holland City Ordinance 1100 is
 
 overly broad and invalid
 
 under the Michigan Home Rule [City] Act and the Michigan Zoning Enabling Act and
 
 *684
 

 enjoins
 
 the City’s enforcement of this ordinance as to billboards. [Emphasis in original.]
 

 We respectfully disagree and reverse. We hold that the sign ordinance is a valid exercise of defendant’s legislative power and that the lower court erred in declaring the subsections invalid under the Home Rule City Act and the Michigan zoning enabling act. The injunction prohibiting the enforcement of the subsections is vacated. Plaintiff’s cross appeal is dismissed as moot.
 

 i
 

 Defendant city of Holland is a municipal corporation organized under the Home Rule City Act. Effective January 5, 1994, defendant enacted Ordinance No. 1100, regarding signs. The intent and purpose of the sign ordinance are set forth in subsection 39.152(a):
 

 This article is intended to protect and further the health, safety, and welfare of the residents of the City of Holland; to further the intent of the city of Holland Zoning Ordinance and its zoning districts; to prevent traffic hazards; to provide safer conditions for pedestrians; to improve community appearance; and to promote economic development by regulating the construction, alteration, repair, maintenance, size, location, and number of signs.
 

 Defendant’s sign ordinance was incorporated into defendant’s preexisting zoning ordinance as article ten.
 

 The provisions of defendant’s sign ordinance that the lower court found invalid as violative of state law are subsection 39-348(g), originally enacted as subsection 39-155(g), and subsection 39-350(b), originally enacted as subsection 39-157(b):
 

 
 *685
 
 Section 39-348. Sign prohibitions.
 

 (g) Billboards and advertising signs are not permitted.
 

 Section 39-350 Nonconforming signs, billboards or advertising signs.
 

 (b) Non-Conforming signs, billboards or advertising signs may not be expanded, enlarged, or extended; however, said signs may be maintained and repaired so as to continue the useful life of the sign.
 

 The ordinance defines “billboard or advertising sign” as “[a] sign which contains a message or advertises an establishment, product, service, space or activity not available on the lot on which the sign is located.” (Section 39-153 as originally codified.)
 

 Shortly after the enactment of defendant’s ordinance, plaintiff filed suit in the United States District Court, Western District of Michigan, Southern Division, challenging the ordinance on the basis that it allegedly violated the First Amendment of the United States Constitution as well as the Michigan Home Rule City Act and the Michigan zoning enabling act. In an order and opinion dated April 21, 1995, the federal district court dismissed the case without prejudice ruling that “the court abstains from exercising its supplemental jurisdiction over the state law issues presented in this case because the relevant state law is uncertain and state court clarification might avoid a federal constitutional ruling.” Thereafter, plaintiff filed the present action in the Allegan Circuit Court. Plaintiff’s first amended complaint con
 
 *686
 
 tained three counts challenging the ordinance as violative of (1) the Home Rule City Act, (2) the Michigan zoning enabling act, and (3) the Highway Advertising Act, MCL 252.301
 
 et seq.]
 
 MSA 9.391(101)
 
 et seq.
 
 Although the circuit court dismissed count three after finding it to be without merit, plaintiff has not argued this issue on appeal and therefore has abandoned any claim under the Highway Advertising Act.
 
 Singerman v Municipal Service Bureau, Inc,
 
 211 Mich App 678, 684; 536 NW2d 547 (1995), aff'd by equal division on other grounds 455 Mich 135; 565 NW2d 383 (1997).
 

 Finally, we note that there are no constitutional issues raised in plaintiffs circuit court complaint. Plaintiff asserts neither a taking issue
 
 [1]
 
 (US Const, Ams V and XIV; Const 1963, art 10, § 2) nor a First Amendment freedom of expression challenge.
 
 [2]
 
 (US Const, Ams I and XIV; Const 1963, art 1, § 5.) Accordingly, the scope of our decision is limited to whether defendant’s sign ordinance is invalid as violating the law of the state of Michigan as set forth in the Home Rule City Act and the zoning enabling act.
 

 n
 

 HOME RULE CITY ACT
 

 In
 
 Detroit v Walker,
 
 445 Mich 682, 687-690; 520 NW2d 135 (1994), our Supreme Court traced the history of municipal home rule in Michigan. Before the Constitution of 1908, the autonomy of city governments was substantially limited and restricted. Propelled by the resentment of state interference with
 
 *687
 
 local matters, the 1908 Constitution granted home rule cities broad autonomy. Thereafter, the Home Rule City Act
 
 [3]
 
 was enacted to implement the shift in constitutional power recognized in the 1908 Constitution.
 

 Our Constitution of 1963 continues the grant of broad power and authority to home rule cities. As recognized by the Supreme Court in
 
 Walker,
 
 at 689-690:
 

 The Michigan Constitution provides that “[t]he provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor.” Const 1963, art 7, § 34. It also provides that “[n]o enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this section.” Const 1963, art 7, § 22.
 

 Accordingly,
 
 it is clear that home rule cities enjoy not only those powers specifically granted, but they may also exercise all powers not expressly denied.
 
 Home rule cities are empowered to form for themselves a plan of government suited to their unique needs and, upon local matters, exercise the treasured right of self-governance. See Const 1963, art 7, § 22.
 

 Our municipal governance system has matured to one of general grant of rights and powers, subject only to certain enumerated restrictions instead of the earlier method of granting enumerated rights and powers definitely specified. The convention comment to the most recent amendment of the Michigan Constitution announces best the current relationship between municipalities and the state. It provides that “a revision of Sec 21, Article VUI, of the present [1908] constitution
 
 reflects Michigan’s successful eocperience with home rule. ”
 
 [Emphasis in original.]
 

 
 *688
 
 The latest Supreme Court decision regarding the regulation of billboards is
 
 Adams Outdoor Advertising v East Lansing,
 
 439 Mich 209; 483 NW2d 38 (1992). In
 
 Adams Outdoor Advertising,
 
 at 218, the Court reiterated the broad authority granted to home cities by the Home Rule City Act:
 

 This reading of
 
 De Mull [v City of Lowell,
 
 368 Mich 242; 118 NW2d 232 (1962)], as not restricting a city’s authority to regulate billboards under the home rule act, is also consistent with this Court’s longstanding liberal interpretation of that act. We noted in
 
 Gallup v Saginaw,
 
 170 Mich 195, 200; 135 NW 1060 (1912), that the home rule act is “one of general grant of rights and powers, subject only to certain enumerated restrictions, instead of the former method of only granting enumerated rights and powers definitely specified. We must assume the act was passed with that intent and construe it accordingly.”
 

 In the present case, plaintiff’s position regarding the Home Rule City Act is at odds with the Supreme Court’s construction of the act. Plaintiff’s argument begins and ends with the premise that the Home Rule City Act is not a general grant of authority but rather a limited grant of only those rights and powers expressly enumerated.
 

 In particular, plaintiff claims that the ordinance violates subsection 4-i(f) of the Home Rule City Act, MCL 117.4i(f); MSA 5.2082(f), which provides as follows:
 

 Sec. 4-i. Each city may in its charter provide:
 

 (f) For licensing, regulating, restricting, and limiting the number and locations of billboards within the city.
 

 
 *689
 
 Plaintiff asserts that because the above home rule provision does not expressly grant authority for home rule cities to prohibit new billboards, defendant city possesses no power to do so. However, as indicated in both
 
 Detroit v Walker, supra,
 
 and
 
 Adams Outdoor Advertising, supra,
 
 unless a power or right is specifically proscribed by law, a home rule city has broad authority to enact ordinances for the benefit of the health, safety, and welfare of its residents. Home rule cities are not limited to only those powers expressly enumerated.
 

 Plaintiffs misinterpretation of our constitution and the Home Rule City Act is based largely on language contained in
 
 Central Advertising Co v Ann Arbor,
 
 391 Mich 533; 218 NW2d 27 (1974). In an opinion that preceded both
 
 Adams Outdoor Advertising
 
 and
 
 Detroit v Walker,
 
 the Supreme Court declared that “[i]n the guise of regulation, the City Council of Ann Arbor has proscribed billboards altogether.”
 
 Central Advertising, supra
 
 at 536. In
 
 Central Advertising,
 
 the Court held that the City of Ann Arbor’s proscription of all billboards, both new and existing, violated the Home Rule City Act. Because this holding has not been overruled, we continue to follow it. Nevertheless, the rationale for the
 
 Central Advertising
 
 holding has been superseded by the subsequent Supreme Court decisions in
 
 Adams Outdoor Advertising
 
 and
 
 Detroit v Walker.
 
 Specifically, the restricted construction of home rule authority accepted by the Supreme Court in
 
 Central Advertising
 
 has now been firmly rejected. In addition, the Supreme Court in
 
 Central Advertising
 
 appears to have relied on
 
 De Mull, supra,
 
 in support of its decision under the Home Rule City Act. However, in
 
 Adams Outdoor Advertising,
 
 
 *690
 

 supra
 
 at 218, the Supreme Court limited the scope of
 
 De Mull,
 
 holding that it had no bearing on the Home Rule City Act. For these reasons, we limit
 
 Central Advertising
 
 to its facts and narrow holding.
 

 Defendant argues that the present case is not controlled by
 
 Central Advertising
 
 because defendant’s ordinance does not proscribe all billboards. We agree. Although new billboards are banned and existing billboards are deemed nonconforming, defendant’s ordinance provides that “signs may be maintained and repaired so as to continue the useful life of the sign.” In this important respect, the city of Holland ordinance is distinguishable from the ordinance at issue in
 
 Central Advertising.
 

 In its opinion, the lower court concluded that “everything has a finite useful life, and the Holland ordinance has the
 
 chilling effect
 
 of eliminating all billboards over time.” (Emphasis added.) The circuit court noted that the ordinance makes no provision for the loss of sites caused by termination of leases, condemnation, change of streets or traffic patterns, or casualty losses. Although the circuit court cited
 
 Adams Outdoor Advertising,
 
 it misconstrued its holding. In
 
 Adams Outdoor Advertising, supra
 
 at 218-219, the Supreme Court held that home rule cities
 
 do
 
 have the power to enact ordinances that eliminate nonconforming signs over time:
 

 Therefore, while the power to amortize nonconforming signs is not expressly delegated in the home rule act, it can be inferred from the broad language of MCL 117.4i(5); MSA 5.2082(5),[
 
 4
 
 ] without limitation by the statutory protection of
 
 *691
 
 nonconforming uses under the zoning enabling act and this Court’s decision in
 
 De Mull.
 
 Contrary to the plaintiffs’ argument, a broad interpretation of the defendant’s power to regulate signs in the home rule act leads to the conclusion that the
 
 defendant did not lack the statutory authority to enact its sign ordinance, including the provision eliminating nonconforming signs over time.
 
 [Emphasis added.]
 

 Because defendant’s sign ordinance is distinguishable from the ordinance held invalid in
 
 Central Advertising,
 
 and because defendant’s authority to enact its ordinance is not proscribed by law, we hold that defendant’s sign ordinance does not violate the Home Rule City Act.
 

 m
 

 ZONING ENABLING ACT
 

 The lower court also ruled that the ordinance enacted by the elected representatives of the city of Holland violates the zoning enabling act. The circuit court ruled that the ordinance was a “policy and philosophical decision that are the result of an impermissible fiat; a whimsical ipsi [sic] dixit.” We respectfully, but strongly, disagree.
 

 Like all laws passed by the legislative branch of government, a zoning ordinance “ ‘comes to us clothed with every presumption of validity.’ ”
 
 Kropf v Sterling Heights,
 
 391 Mich 139, 162; 215 NW2d 179 (1974) (citations omitted). See also
 
 Kirk, supra
 
 at 439. In view of the constitutionally mandated separations of powers, the judicial branch of government should not impose by judicial fiat its policy and philosophical decisions on another branch of government. The policy and philosophical decisions of the legisla
 
 *692
 
 tive branch must be respected unless unconstitutional or contrary to law.
 

 A
 

 In declaring defendant’s sign ordinance invalid as violating the zoning enabling act, the circuit court appears to have ruled that there is not a reasonable governmental interest advanced by the ordinance. In this regard, the lower court placed the burden of sustaining its ordinance on defendant city:
 

 The City of Holland has failed to offer sufficient evidence
 
 to justify such a stringent zoning regulation as Ordinance 1100. Unlike East Lansing, Holland did not conduct any research studying the effect of signs and billboards in city limits prior to enacting its sweeping ordinance. [Emphasis added.]
 

 In addition, the court ruled that aesthetic concerns alone were not a reasonable governmental interest:
 

 Holland city planners relied solely on aesthetic and philosophical concerns to validate the ordinance. Although pertinent evidence, this court finds such concerns alone unpersuasive when weighted against the gradual elimination of all billboards.
 

 We disagree with both rulings. Because the ordinance is clothed with every presumption of validity, the burden of proof is on a party challenging the ordinance, not on the city.
 
 Kropf, supra; Kirk, supra.
 
 Further, the sign ordinance itself sets forth as its specific purposes “to prevent traffic hazards; to provide safer conditions for pedestrians; to improve community appearance; and to promote economic development by regulating the construction, alteration, repair, maintenance, size, location, and number of signs.”
 

 
 *693
 
 The circuit court erroneously placed the burden on defendant to justify the validity of its ordinance and erred in concluding that the city’s aesthetic concerns and other interests were not reasonable governmental interests. In this regard, our Court has previously held that “[t]he city’s aesthetic interests are alone sufficient to justify billboard regulation . . . .”
 
 Gannett Outdoor Co of Michigan v City of Troy,
 
 156 Mich App 126, 136; 409 NW2d 719 (1986). After our review, we hold that plaintiff did not sustain its burden of proving that no reasonable governmental interest was advanced by the sign ordinance.
 

 B
 

 In regard to plaintiff’s claim of illegal exclusionary zoning, the circuit court correctly determined that plaintiff bore the burden of production and persuasion. However, the trial court clearly erred in assessing the evidence.
 

 At issue is the following section of the zoning enabling act:
 

 A zoning ordinance or zoning decision shall not have the effect of totally prohibiting the establishment of a land use within a city or village
 
 in the presence of a demonstrated need for that land use
 
 within either the city or village or the surrounding area within the state, unless a location within the city or village does not exist where the use may be appropriately located or use is unlawful. [MCL 125.592; MSA 5.2942 (emphasis added).]
 

 Interpreting the virtually identical Township Rural Zoning Act, MCL 125.297a; MSA 5.2963(27a),
 
 [5]
 
 this Court in
 
 Eveline Twp v H & D Trucking Co,
 
 181 Mich
 
 *694
 
 App 25, 32; 448 NW2d 727 (1989), held that the following proofs must be established in order to sustain a claim that an ordinance is not valid:
 

 Under § 27(a), a zoning ordinance may not totally exclude a land use where (1) there is a demonstrated need for that land use in the township or surrounding area, (2) the use is appropriate for the location, and (3) the use is lawful.
 

 See also
 
 Bell River Associates v China Charter Twp,
 
 223 Mich App 124, 135-136; 565 NW2d 695 (1997);
 
 English v Augusta Twp,
 
 204 Mich App 33, 37-39; 514 NW2d 172 (1994);
 
 Fremont Twp v Greenfield,
 
 132 Mich App 199, 203-205; 347 NW2d 204 (1984).
 

 Utilizing the
 
 Eveline
 
 standard in the present circumstances, our review of the record clearly indicates that plaintiff did not sustain its burden of proving “a demonstrated need for [the] land use,” MCL 125.592; MSA 5.2942, of new billboards by the residents of the city of Holland. The following testimony was elicited during the nonjury trial in the instant case.
 

 Plaintiff called four witnesses in support of its claims. Plaintiff’s first witness was Adams Outdoor Sales Account Executive Gregory Newsted. Mr. Newsted testified in regard to the demand for billboard space in the Holland market by national, state, and local advertisers. Plaintiff’s second witness was plain
 
 *695
 
 tiff’s real estate manager, Julie Kay McBeth, who testified regarding the business of leasing property for billboards. Ms. McBeth testified how lease space is obtained and how leases are lost. Further, she stated that eighteen of plaintiffs billboard leases had been lost since 1994. Plaintiffs third witness was another of its employees, Patricia Guild, who as a “market scheduler” kept track of scheduling all billboard panels in the Holland market. Plaintiffs final witness was “outdoor industry” consultant Sam Evola. Mr. Evola testified, in part, regarding the loss of leases for billboards. He opined that “the industry averages about ten percent attrition a year” and that “if you’re going to lose ten percent a year obviously in ten years you haven’t got any signs left.” After admitting exhibits into evidence together with a stipulation of facts agreed to in the dismissed federal action, plaintiff rested.
 

 Thereafter, defendant city called Cindy Osman and Dale Wyngarden. Ms. Osman was a city employee who was in charge of zoning enforcement. Ms. Osman testified regarding plaintiffs attempt to obtain a sign permit and its failure to apply for a variance with the zoning board of appeals. Defendant’s second witness was Mr. Wyngarden, director of the department of community services including city planning. Mr. Wyngarden testified that he was involved in the recommendation for the sign ordinance to the planning commission and then to the Holland City Council. According to Director Wyngarden, the first draft of the sign ordinance was written in 1989. During the next four years, the ordinance underwent “evolution” into its final form. According to Wyngarden, during this evaluation period, the maturation of the city was
 
 *696
 
 considered along with the lack of need for new billboards within the city:
 

 Q. [Ronald Vander Veen, deputy city
 
 attorney]: Dale, now-lets [sic] focus specifically on billboards a moment in the ordinance. I take it you’re familiar with the ordinance provision that says no new billboards.
 

 A
 
 [Dale
 
 Wyngarden]: Yes, I am.
 

 Q.
 
 Was there discussion as to the rationale for that in terms of traffic safety and esthetics with the planning commission?
 

 A.
 
 Yes, there was.
 

 Q.
 
 What was the—can you explain the purpose for recommending that provision in those areas?
 

 A.
 
 Well, it was a change from the preceding ordinance which had allowed billboards as principal uses of vacant property. One of the things we were very cognizant of as we were going through the master plan process was that Holland was and is a maturing city. It’s celebrating its sesquesentenial [sic]. The inventory of undeveloped land within the city, vacant land, is rapidly diminishing. As we undertook this study process the whole issue of billboards seemed at that time to be moot point. We hadn’t had any interest in billboard construction in the city for a couple of decades, and as we looked at what little vacant land remained, felt that it was more appropriately master planned for residential, industrial, commercial types of uses as opposed to billboard uses.
 

 Q.
 
 In terms of esthetics and the sign ordinance in general, what was the purpose or what was the rationale in the changes, the fine tuning of the zoning ordinance in that respect?
 

 A.
 
 By their nature billboards kind of screamed to be seen. We approach cite [sic] plan review for any new development, taking very seriously the whole issue of landscaping.
 
 *697
 
 Virtually every new development is required to submit a landscape plan. We’re a tree city USA, have been for years, and I think as the planning commission looked at the very nature of billboards, you know, wanting to be exposed, we felt that there was some inconsistency with increased development of billboards and what we were trying to accomplish as a community in other respects with respect to green belts, landscaping, trees and rights-of-way and so forth.
 

 Q.
 
 From a land use standpoint are there concerns about billboards in this downtown area?
 

 A.
 
 Yes, absolutely.
 

 Q.
 
 Can you describe for us those concerns?
 

 A.
 
 I can. On several fronts we have since the mid 1980’s been a mainstreet USA program which is an affiliation with the National Trust for Historic Preservation. We have taken great pride in what’s happened in our downtown in terms of ripping off the 1950’s aluminum store fronts and revealing the architectural character of the dates predominantly back to the 1890’s through about the 1920’s. We have had somewhere in the range of $50,000,000 worth of private reinvestment in our downtown over the last ten to fifteen years. Along with that the public investment in 7th Street, 9th Street within the last three years has been upwards of $3,000,000. In cooperation with mdot on our state trunk line highway system through town mostly adding curb and gutter, irrigation, planters, curb strip trees to what were fairly barren highways. Along 7th Street our Board of Public Works, a municipal owned and operated electric system just invested a million dollars to lay conduit underneath 7th Street which is bordered I think by two or three of those locations proposed for billboards simply for purposes of getting rid of overhead wire, and I think the community would perceive the placement of billboards in those locations as an abomination, an assault on what we’ve tried to accomplish aesthetically downtown.
 

 
 *698
 
 As its final witness, plaintiff recalled Julie Kay McBeth in rebuttal. Closing arguments were thereafter heard and the case was submitted under advisement.
 

 Although the trial court, in its written opinion, cursorily concluded that plaintiff “has met its
 
 Eveline
 
 burden,” our review of the record leads to a contrary conclusion. Plaintiff’s proofs at trial did not establish “a demonstrated need for [the] land use” as required by the statute.
 
 Eveline, supra
 
 at 32. It has long been recognized that “[t]he lack of need for the proposed use or the overabundance of similar, existing uses are matters for consideration” when evaluating a claim that such use is improperly restricted or excluded.
 
 Bristow v Woodhaven,
 
 35 Mich App 205, 219; 192 NW2d 322 (1971). The evidence shows that currently at least twenty of the billboard faces already existing within the city of Holland (and therefore “grandfathered” by the ordinance) are owned and controlled by plaintiff. Plaintiff owns or controls another seventy-eight billboard faces in the outlying Holland/Zeeland market area. As noted above, plaintiff presented testimony to the effect that it would be able to sell advertising space on the proposed billboard faces. However, while the desire by national, state, and local advertisers for billboards may well demonstrate a
 
 demand
 
 for the billboards, such proofs are not sufficient to demonstrate the requisite public
 
 need
 
 for new billboards. The demonstrated need that must be shown under the zoning enabling act relates to the public need of the residents of the community, not merely to plaintiff’s private economic self-interest.
 

 For instance, in
 
 Eveline, supra,
 
 the township brought suit to enjoin the defendant trucking com-
 
 *699
 
 party from operating a commercial deep-water port within the township in violation of a township ordinance. This Court upheld the trial court’s ruling that the zoning ordinance had the effect of totally prohibiting a commercial port facility within the township and that this constituted unlawful exclusionary zoning, finding in pertinent part:
 

 The record establishes a demonstrated need for defendant’s port facility to provide construction materials for Emmet and Charlevoix Counties. There are no available alternative port sites in the area; the alternative would be to transport these bulk materials solely by truck, which would be considerably more expensive. Testimony indicated that there was a continuing and substantial need for these materials for road building and other construction.
 
 [Eveline, supra
 
 at 32-33.]
 

 See also
 
 English, supra
 
 at 38-39.
 

 No comparable demonstrated public need has been shown in the instant case. Given plaintiff’s failure to produce sufficient proofs regarding the essential element of “demonstrated need,”
 
 Eveline, supra,
 
 we hold that the trial court clearly erred in ruling that plaintiff had sustained its burden of proving illegal exclusionary zoning in violation of MCL 125.592; MSA 5.2942. The presumption of validity of the ordinance has not been overcome. Plaintiff’s remedies lie in the political arena with the Holland City Council and the state Legislature rather than with the courts.
 
 Brae Burn, Inc v Bloomfield Hills,
 
 350 Mich 425, 431; 86 NW2d 166 (1957) (Smith, J.).
 

 In view of our disposition, we find it unnecessary to address defendant’s alternative argument that plaintiff’s complaint is barred because of its alleged failure to exhaust administrative remedies by failing
 
 *700
 
 to seek a variance from the zoning board of appeals. See, generally,
 
 Paragon Properties Co v Novi,
 
 452 Mich 568; 550 NW2d 772 (1996). Plaintiffs cross appeal is dismissed as moot.
 

 Reversed. The injunction is vacated. Defendant, being the prevailing party, may tax costs pursuant to MCR 7.219.
 

 [1]
 

 See, generally,
 
 Adams Outdoor Advertising v East Lansing,
 
 232 Mich App 587; 591 NW2d 404 (1998).
 

 [2]
 

 See, generally,
 
 Gannett Outdoor Co of Michigan v City of Troy,
 
 156 Mich App 126; 409 NW2d 719 (1986).
 

 [3]
 

 While initially lacking a formal title, this act is now titled as the Home Rule City Act in an amendment effective October 1, 1994. MCL 117.1a; MSA 5.2071(1).
 

 [4]
 

 MCL 117.4i(5); MSA 5.2082(5) was the substantively identical predecessor to the current MCL 117.4i(f); MSA 5.2082(f).
 

 [5]
 

 MCL 125.297a; MSA 5.2963(27a) provides:
 

 
 *694
 
 A zoning ordinance or zoning decision shall not have the effect of totally prohibiting the establishment of a land use within a township in the presence of a demonstrated need for that land use within either the township or surrounding area within the state, unless there is no location within the township where the use may be appropriately located, or the use is unlawful.