# STATE OF MICHIGAN

# COURT OF APPEALS

INTERNATIONAL OUTDOOR, INC.,

Plaintiff-Appellant,

v

CITY OF LIVONIA,

Defendant-Appellee.

UNPUBLISHED
June 14, 2016

No. 325243
Wayne Circuit Court
LC No. 14-008996-CZ

Before: MURRAY, P.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

Plaintiff, International Outdoor, Inc., is in the business of selling advertising space on billboards. Defendant, the city of Livonia, denied plaintiff's permit application to erect a billboard in defendant's city limits, and defendant's zoning board of appeals denied plaintiff's request for a variance from the city's zoning ordinance provisions banning new billboards. Subsequently, plaintiff filed this action in the Wayne Circuit Court, challenging defendant's ordinance on the basis that (1) it resulted in impermissible exclusionary zoning under both the Michigan Zoning Enabling Act ("ZEA"), MCL 125.3101 *et seq.*, and the common law, and (2) it violated plaintiff's right to equal protection under the law. The trial court granted defendant's motion for summary disposition. Plaintiff appeals as of right. We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Since 1952, defendant's zoning ordinance has prohibited the installation of any off-premises billboard within the city. Billboards that existed when the ordinance was enacted were allowed to remain, but the last of those billboards was eliminated in 1986.

In particular, § 18.16 of the zoning ordinance provides:

The erection and maintenance of billboards and outdoor advertising signs on any parcel of land within the City of Livonia, or the use of any such parcel for said purpose, are hereby prohibited; provided, however, that this section shall not apply to billboards or outdoor advertising signs lawfully in existence at the time this ordinance becomes effective, nor to those specific signs which are expressly allowed by the district regulations contained in this ordinance.

Section 18.50C, the provision specifically challenged by plaintiff, states:

*Section 18.50C Prohibited Signs*. . . .  A sign not expressly permitted in a zoning district is prohibited.  The following signs as defined in Section 18.50A of this ordinance shall not be permitted and are expressly prohibited in any zoning district:

\* \* \*

2.  "Billboards"

Section 18.50A of defendant's zoning ordinance defines a "billboard" as "[a] ground sign advertising a product, event, person, business or subject not related to the premises on which the sign is located."  Thus, a "billboard" is an "off-premises" sign—one that advertises a product not available at the location on which the sign is located.  "On-premises" signs are permitted so long as they meet certain site requirements.

Additionally, defendant's sign ordinances generally permit two types of signs outside of buildings:  (1) wall signs, the maximum area of which are determined by the building's frontage on the adjoining street, and (2) grounds signs, which are generally limited to a height of no more than six feet, measured from the ground, and 30 square feet in area.

In December 2013, plaintiff filed a permit application to erect a billboard on leased property adjacent to the I-96 expressway.  The application was denied because defendant did not allow billboards within its boundaries and the desired sign was too large to be permitted as a freestanding sign under the zoning ordinance.  The zoning board of appeals denied plaintiff's subsequent request for a variance.

In July 2014, plaintiff filed a complaint in the circuit court, alleging that defendant's ordinance completely excluded an otherwise permissible use of land, was contrary to plaintiff's right to equal protection under the state and federal constitutions, and amounted to impermissible exclusionary zoning in violation of MCL 125.3207 and the common law.  Defendant moved for summary disposition, arguing, *inter alia*, that (1) the ordinance was properly enacted to promote aesthetic qualities and traffic safety and, therefore, was reasonably related to the health, safety, or general welfare of the community; (2) as a city-wide ban on all new billboards, the ordinance did not treat plaintiff differently than any other similarly situated person or entity; and (3) plaintiff failed to establish a demonstrated need for billboards within defendant's boundaries.

The trial court granted defendant's motion, concluding that plaintiff failed to demonstrate a need for billboards within defendant's city limits because of the "umpteen billboards that surround this area," and that plaintiff's constitutional challenges lacked merit because defendant's concerns for traffic safety and aesthetics were reasonably related to the ordinance's purpose.

## II.  STANDARD OF REVIEW

We review *de novo* a trial court's grant or denial of summary disposition.  *Moraccini v Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012).  Defendant moved for summary disposition under MCR 2.116(C)(8) and (10).  "A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the complaint," *Johnson v Pastoriza*, 491 Mich 417,

434-435; 818 NW2d 279 (2012), and a court may consider only the pleadings in reviewing the motion, *Patterson v Kleiman,* 447 Mich 429, 432; 526 NW2d 879 (1994). However, "[a] motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint," and the court may consider documentary evidence submitted by the parties when considering the motion. *Cannon Twp v Rockford Pub Sch,* 311 Mich App 403, 411; 875 NW2d 242 (2015). Although the trial court did not explain whether it granted summary disposition under one or both of these subrules, it is clear from the trial court's statements on the record that it considered information outside of the pleadings. Thus, we will consider the motion as being granted under MCR 2.116(C)(10). *Hughes v Region VII Area Agency on Aging*, 277 Mich App 268, 273; 744 NW2d 10 (2007).

When reviewing a motion for summary disposition pursuant to MCR 2.116(C)(10), we may only consider, in the light most favorable to the party opposing the motion, the evidence that was before the trial court, which consists of "the 'affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties.' " *Calhoun Co v Blue Cross Blue Shield Michigan*, 297 Mich App 1, 11; 824 NW2d 202 (2012), quoting MCR 2.116(G)(5). Under MCR 2.116(C)(10), "[s]ummary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

Additionally, this Court reviews equal protection challenges to zoning ordinances *de novo*. *Houdek v Centerville Twp*, 276 Mich App 568, 573; 741 NW2d 587 (2007).

## III.  ANALYSIS

Although framed as only two issues on appeal, plaintiff actually raises three separate claims:  (1) defendant's zoning ordinance violates Michigan common-law principles that a municipalty may not wholly prohibit a lawful business or lawful land use; (2) defendant's zoning ordinance violates the equal protection clause of Michigan's Constitution; and (3) defendant's zoning ordinance violates Michigan's statutory prohibition against exclusionary zoning under MCL 125.3207.  As explained *infra*, plaintiff's first and second arguments are interconnected.

We reject all of plaintiff's claims.

## A.  EXCLUSIONARY ZONING UNDER MICHIGAN COMMON LAW PRINCIPLES

Plaintiff first argues that the trial court erred in granting summary disposition of its common-law claim for exclusionary zoning,[1] which is based on its contention that defendant's

---

[1] In reviewing this claim, we assume, without deciding, that common-law claims concerning exclusionary zoning are still viable following the adoption of the ZEA.  See MCL 125.3207 (governing when a zoning ordinance or decision may not have the effect of completely prohibiting a land use within a city or other local unit of government).  There is a question of

ban on new billboards violates the equal protection clause of the Michigan Constitution, Const 1963, art 1, § 2. We disagree.

The essence of plaintiff's claim is that "Section 18.50C of Livonia's zoning ordinance violates a simple rule: 'We know from our precedents that a community cannot effectively zone out legal businesses.' *Truckor v Erie Twp*, 283 Mich App 154, 164; 771 NW2d 1 (2009)." In *Truckor*, a case reviewing plaintiffs' claims that an adult entertainment ordinance violated their First Amendment right to free speech, this Court stated:

> We know from our precedents that a community cannot effectively zone out legal businesses. For example, in *City of Ferndale v Ealand (On Remand)*, 92 Mich App 88, 90; 286 NW2d 688 (1979), the city of Ferndale enacted an ordinance allowing for the operation of adult businesses in a C-2 district so long as it was not within 1,000 feet of any residential type dwelling, but allowing for a waiver of the footage requirement under certain circumstances. At the trial held on the plaintiff's equal protection claim, a city building inspector testified that no location within the C-2 district met the ordinance requirements. *Id.* at 90-91. Relying on *Young, supra*, and *Nortown Theatre Inc v Gribbs*, 373 F Supp 363, 369-370 (ED Mich, 1974), this Court held the ordinance to be a violation of the equal protection clause because " 'the effect of the restriction is an almost total ban on uses conceded by the Defendants to be lawful.' " *Ealand, supra* at 93, quoting *Nortown, supra* at 369-370. This Court also rejected the city's argument that the waiver would provide sufficient flexibility to uphold its constitutionality. *Ealand, supra* at 94. [*Truckor*, 283 Mich App at 164-165.]

In addition to *Truckor*, plaintiff cites numerous cases concerning various types of businesses and land uses, ultimately concluding from this caselaw that "local government cannot suppress what the state promotes or permits," and, thus, § 18.50C is invalid because it bans a land use that the state recognizes as legal or legitimate.

To demonstrate that Michigan law recognizes billboard advertising as a legal and legitimate land use, plaintiff relies on § 3 of the Highway Advertising Act of 1972 ("HAA"), MCL 252.301 *et seq.*, which provides:

> To improve and enhance scenic beauty consistent with section 131 of title 23 of the United States Code, 23 USC 131, and to limit and reduce the illegal possession and use of tobacco by minors, the legislature finds it appropriate to regulate and control outdoor advertising and outdoor advertising as it pertains to tobacco adjacent to the streets, roads, highways, and freeways within this state and that outdoor advertising is a legitimate accessory commercial use of private property, is an integral part of the marketing function and an established segment of the economy of this state. [MCL 252.303.]

whether that is the case in light of *Hendee v Putnam Twp*, 486 Mich 556, 565-566; 786 NW2d 521 (2010).

Accordingly, given Michigan caselaw in conjunction with this statute, plaintiff reasons that "[u]nder Michigan law, no municipality can declare itself a billboard free community."

First, plaintiff's dependence on MCL 252.303 as a means of demonstrating that defendant's ordinance impermissibly prohibits a commercial activity permitted and endorsed by the state is undercut by § 4 of the HAA, which recognizes that ordinances that were already in existence in 1972 are not invalidated by the Legislature's adoption of the HAA:

> This act regulates and controls the size, lighting, and spacing of signs and sign structures in adjacent areas and occupies the whole field of that regulation and control except for the following:
>
> * * *
>
> (c) An ordinance or code of a city, village, township, or charter township that existed on March 31, 1972 and that prohibits signs or sign structures is not made void by this act. [MCL 252.304(c).]

Plaintiff contends that § 18.50C, in its current form, was not implemented until 1978. The 1978 enactment was one of many amendments to, and recodifications of, the 1952 version of the ordinance.[2] It is undisputed that defendant's zoning ordinance has banned new billboards continuously since 1952, and § 4.16 of the zoning ordinance approved in 1952 includes language identical to § 18.16 of the successor and current version of defendant's zoning ordinance.[3] Thus, it is clear defendant's prohibition of new billboards was in effect when MCL 252.303 was adopted in 1972. Accordingly, we are not persuaded that the language of MCL 252.303 and the rest of the HAA, to the extent that it permits and promotes outdoor commercial signage, demonstrates that defendant's prohibition of new billboards conflicts with the Michigan caselaw cited by plaintiff, as MCL 252.304(c) plainly recognizes the possibility that ordinances prohibiting signs or structures will remain valid following the enactment of the HAA. Therefore, plaintiff has failed to demonstrate, through its reliance on the HAA, that defendant's ordinance conflicts with state law.

Further, plaintiff has failed to show that the ordinance does, in fact, "zone out" a legal business in contravention of Michigan caselaw. See *Truckor*, 283 Mich App at 164-165. The ban on erecting new billboards does not prevent advertisers who use billboards in their course of business from soliciting and serving clients with businesses within defendant's jurisdiction or

---

[2] Based on our review of defendant's municipal code, it appears that its original zoning ordinance, Ordinance No. 60, was recodified before the late 1960s through the enactment of Ordinance No. 543. Subsequently, individual articles and sections of the zoning ordinance have been amended on numerous occasions.

[3] It appears that § 18.16 was enacted in its current form when the zoning ordinance was recodified before the late 1960s.

performing the day-to-day operations of their businesses within defendant's city limits. It only prohibits the actual construction of new billboards inside defendant's borders.

Likewise, we are not persuaded that the cases cited by plaintiff on appeal compel a finding that defendant's ordinance impermissibly " 'zone[s] out' lawful activities" in this case. These cases recognize, despite plaintiff's selective pincites in its brief, that municipalities may enact reasonable zoning regulations that prohibit lawful land uses as long as they are reasonably related to the public health, safety, morals, or general welfare. See, e.g., *Bzovi v City of Livonia*, 350 Mich 489, 492; 87 NW2d 110 (1957); *Gust v Canton Twp*, 342 Mich 436, 438-439, 442; 70 NW2d 772 (1955); *Mooney v Village of Orchard* Lake, 333 Mich 389, 393; 53 NW2d 308 (1952).[4] We find especially noteworthy the fact that one of the cases quoted by plaintiff specifically states that a city may prohibit the construction of billboards within its borders:

> *The city may* establish zones *and prohibit the erection of billboards therein* and may, to promote public health, safety, and general welfare, within reasonable considerations, regulate the maintenance of billboards, but may not arbitrarily strike down the maintenance of erected billboards or vest such power of arbitrary action in municipal officers. [*Wolverine Sign Works v City of Bloomfield Hills*, 279 Mich 205, 208; 271 NW 823 (1937) (emphasis added).]

Most significantly, plaintiff relies on *Central Advertising Co v City of Ann Arbor*, 391 Mich 533, 536; 218 NW2d 27 (1974), and *Central Advertising Co v St Joseph Twp*, 125 Mich App 548, 555; 337 NW2d 15 (1983), as support for its ultimate conclusion that "[u]nder Michigan law, no municipality can declare itself a billboard free community." In *City of Ann Arbor*, 391 Mich at 536, the Michigan Supreme Court stated, "Neither the Home Rule Act nor the Charter of the City authorizes the Council to eliminate billboards. In combination, the various restrictions, tantamount to a proscription of billboards, exceed the authority of the Council under the Home Rule Act and Charter." Similarly, relying on *City of Ann Arbor*, 391 Mich at 536, and *Superior Twp v Reimel Sign Co*, 362 Mich 481, 482; 107 NW2d 808 (1961), this Court held in *St Joseph Twp*, 125 Mich App at 555, that "[a]lthough defendant has authority to regulate advertising signs, it does not have the power to prohibit them in totality."

In light of more-recent case law limiting the holding of *City of Ann Arbor*, 391 Mich 533, we disagree with plaintiff's contention that Michigan "common law" generally prohibits

---

[4] We reject plaintiff's reliance on *National Amusement Co v Johnson*, 270 Mich 613, 616; 259 NW 342 (1935) (stating that "in the absence of specific statutory or charter power in the municipality, the provisions of an ordinance which contravene a state law are void. What the Legislature permits, the city cannot suppress, without express authority therefor") (citations omitted), for the proposition that "local government cannot suppress what the state promotes or permits." Plaintiff fails to recognize that, through subsequent constitutional and statutory developments, "[o]ur municipal governance system has matured to one of general grant of rights and powers, subject only to certain enumerated restrictions instead of the earlier method of granting enumerated rights and powers definitely specified." *City of Detroit v Walker*, 445 Mich 682, 690; 520 NW2d 135 (1994).

defendant's ordinance in this case. In *Adams Outdoor Advertising, Inc v City of Holland*, 234 Mich App 681, 689-690; 600 NW2d 339 (1999), aff'd 463 Mich 675 (2001), we explained:

> Plaintiff's misinterpretation of our constitution and the Home Rule City Act is based largely on language contained in *Central Advertising Co v Ann Arbor*, 391 Mich 533, 218 NW2d 27 (1974). In an opinion that preceded both *Adams Outdoor Advertising* [*v East Lansing*, 439 Mich 209; 483 NW2d 38 (1992),] and *Detroit v Walker*, [445 Mich 682, 687-690, 520 NW2d 135 (1994),] the Supreme Court declared that "[i]n the guise of regulation, the City Council of Ann Arbor has proscribed billboards altogether." *Central Advertising, supra* at 536. In *Central Advertising*, the Court held that the City of Ann Arbor's proscription of all billboards, both new and existing, violated the Home Rule City Act. Because this holding has not been overruled, we continue to follow it. Nevertheless, the rationale for the *Central Advertising* holding has been superseded by the subsequent Supreme Court decisions in *Adams Outdoor Advertising* and *Detroit v Walker*. Specifically, the restricted construction of home rule authority accepted by the Supreme Court in *Central Advertising* has now been firmly rejected. In addition, the Supreme Court in *Central Advertising* appears to have relied on *De Mull* [*v City of Lowell*, 368 Mich 242; 118 NW2d 232 (1962),] in support of its decision under the Home Rule City Act. However, in *Adams Outdoor Advertising, supra* at 218, the Supreme Court limited the scope of *De Mull,* holding that it had no bearing on the Home Rule City Act. For these reasons, we limit *Central Advertising* to its facts and narrow holding.
>
> Defendant argues that the present case is not controlled by Central Advertising because defendant's ordinance does not proscribe all billboards. We agree. *Although new billboards are banned and existing billboards are deemed nonconforming, defendant's ordinance provides that "signs may be maintained and repaired so as to continue the useful life of the sign." In this important respect, the city of Holland ordinance is distinguishable from the ordinance at issue in Central Advertising.* [Emphasis added.]

Later, in affirming our opinion in *City of Holland*, 234 Mich App 681, the Michigan Supreme Court stated:

> Moreover, on its face, the challenged ordinance sections do not currently completely prohibit billboards in Holland. While new billboards are banned, current billboards may remain. Section 39-350(b) specifically permits a billboard owner to maintain and repair existing signs so as to continue their useful life. Also, § 39-350(e) authorizes a billboard owner to remove a sign from its location for repair and maintenance and then to replace it.
>
> Therefore, we hold that, although the ordinance sections do limit the number of billboards within the city, they do not constitute an impermissible total prohibition of billboards. See *Ann Arbor, supra; Mount Elliott Cemetery Ass'n, supra* at 407; *Gustafson v City of Lake Angelus*, 76 F3d 778, 790 (CA 6, 1996), cert den 519 US 823, 117 S Ct 81, 136 L Ed 2d 39 (1996); *Guy, supra* at 785.

[*Adams Outdoor Advertising, Inc v City of Holland*, 463 Mich 675, 685; 625 NW2d 377 (2001) (footnote omitted).]

In a footnote, the Supreme Court noted:

> We note plaintiff's contention that, with the passage of time, the ordinance might effectively eliminate all billboards. If that eventuality arises, our opinion should not be construed as foreclosing an "as applied" challenge to the ordinance. However, we need not address that contention because the present case involves a facial challenge to the validity of the ordinance sections under consideration. [*Id*. at 685 n 11.]

Here, defendant's zoning ordinance is analogous to the ordinance at issue in *City of Holland*, as it does not constitute a *total* prohibition on billboards on its face. Although §18.50C and § 18.16 prohibit the erection and maintenance of billboard signs in all zoning districts, § 18.16 specifically provides that the prohibition does "not apply to billboards or outdoor advertising signs lawfully in existence at the time this ordinance becomes effective, nor to those specific signs which are expressly allowed by the district regulations contained in this ordinance." Thus, we conclude that *City of Holland*, not *City of Ann Arbor* and *St Joseph Township*, is controlling in this case. As a result, we reject any facial challenge to defendant's ban on new billboards based on the line of caselaw cited by plaintiff on appeal.

Further, to the extent that this case may comprise the "eventuality" recognized by the Michigan Supreme Court in *City of Holland*, 463 Mich at 685 n 11, in light of the fact that all Livonia billboards lawfully in existence when defendant's ordinance was enacted have now been removed, and to the extent that plaintiff arguably raised an as-applied challenge in addition to its facial challenges to the ordinance,[5] we find that plaintiff has failed to establish such a claim. As demonstrated by plaintiff's reliance on *Truckor*, 283 Mich App at 164-165, as well as its briefing of this issue in the trial court and on appeal, plaintiff's "common law" exclusionary zoning claim is intertwined with its constitutional equal protection claim, discussed *infra*. See also *Kropf v*

---

[5] Notably, plaintiff characterized its claims as facial challenges in its response to defendant's motion for summary disposition. Likewise, it expressly rejects on appeal the trial court's characterization of its claims as as-applied challenges to the ordinance, stating, "The circuit court's determination that [plaintiff's] challenge was 'as applied' is inexplicable." Despite the trial court's characterization of plaintiff's complaint as solely raising as-applied claims, it appears that plaintiff's complaint raised both facial and as-applied challenges to defendant's ordinance. See *Paragon Properties Co v City of Novi*, 452 Mich 568, 576; 550 NW2d 772 (1996) (distinguishing between facial and as-applied challenges); *Jott, Inc v Charter Twp of Clinton*, 224 Mich App 513, 525; 569 NW2d 841 (1997) ("A facial challenge is one that attacks the very existence or enactment of the ordinance; it alleges that the mere existence and threatened enforcement of the ordinance adversely affects all property regulated in the market as opposed to a particular parcel."). However, it appears that plaintiff abandoned its as-applied claims on appeal given its failure to make any argument in that regard and its explicit repudiation of the trial court's characterization of its claims as being "as applied."

*Sterling Heights*, 391 Mich 139, 155-156; 215 NW2d 179 (1974) ("On its face, an ordinance which *totally* excludes from a municipality a use recognized by the Constitution or other laws of this State as legitimate also carries with it a strong taint of *unlawful discrimination and a denial of equal protection of the law* as to the excluded use.") (emphasis added); *Countrywalk Condominiums, Inc v City of Orchard Lake Village*, 221 Mich App 19, 23-24; 561 NW2d 405 (1997) (citing *Kropf* and its progeny; stating that an ordinance completely excluding a land use is not presumed valid, but "will be declared valid if the exclusion has a reasonable relationship to the health, safety, or general welfare of the community"; and describing the burden of proof during such a challenge); *City of Ferndale v Ealand*, 92 Mich App 88, 90-91; 286 NW2d 688 (1979) (cited in *Truckor*), citing *Kropf*, 391 Mich 139. Therefore, even if plaintiff's common law exclusionary zoning claim comprises a challenge recognized by the Michigan Supreme Court in *City of Holland*, 463 Mich at 685 n 11, it fails for the reasons discussed later in this opinion.

Thus, the trial court properly granted summary disposition in favor of defendant with regard to plaintiff's claim of exclusionary zoning under Michigan "common law."

B. EQUAL PROTECTION

Next, plaintiff contends that defendant's ban on new billboards is exclusionary and violates the Equal Protection Clause of Michigan's Constitution because defendant failed to demonstrate that the ordinance advances a legitimate governmental interest. We disagree.

"The state and federal constitutions guarantee equal protection of the laws. US Const, Am XIV; Const 1963, art 1, § 2; *In re Hawley*, 238 Mich App 509, 511; 606 NW2d 50 (1999)." *Landon Holdings, Inc v Grattan Twp*, 257 Mich App 154, 173; 667 NW2d 93 (2003). "The essence of an equal protection claim is discrimination based on characteristics not justifying different treatment." *Id*. at 176. Zoning ordinances are usually presumed valid, *id*. at 174, and "[w]hen no suspect or somewhat suspect classification can be shown, the plaintiff has the burden of establishing that the statute is arbitrary and not rationally related to a legitimate governmental interest." *Id*. at 173. See also *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 486 Mich 311, 318-319; 783 NW2d 695 (2010); *Houdek*, 276 Mich App at 573-574 ("In regard to an equal protection challenge to a governmental regulation, a two-part test is to be applied: (1) Are the enactment's classifications based on natural distinguishing characteristics and do they bear a reasonable relationship to the object of the legislation? (2) Are all persons of the same class included and affected alike or are immunities or privileges extended to an arbitrary or unreasonable class while denied to others of like kind?") (quotation marks and citation omitted).

However, under *Kropf*, 391 Mich 155-156, a zoning ordinance that totally excludes a particular use recognized by Michigan law is not presumed valid, and the burden shifts to the defendant to establish the reasonableness of the ordinance. *Landon Holdings*, 257 Mich App at 174-176. When the burden shifts, the standard for an "equal protection claim remain[s] the same; the ordinance must reasonably advance a legitimate governmental interest." *Id*. at 174, citing *Kropf*, 391 Mich at 158. See also *Houdek*, 276 Mich App at 573-574 (further describing a plaintiff's burden in raising a facial challenge).

In this case, defendant demonstrated that the intent of § 18.50C, as well as its intent with regard to other sign restrictions, is expressed in § 18.50 of the zoning ordinance, which states, in relevant part:

> It is not the intent of this ordinance to have the open spaces and lines of vision created by public rights-of-way used as license for unrestricted advertising through the use of signage, but rather to enhance the physical appearance of the City, preserve scenic and natural beauty of designated areas, make the City a more enjoyable and pleasing community and to create a more attractive economic and business climate by preserving property values. It is intended by the provisions of this ordinance to reduce sign or advertising distractions, to eliminate the visual blight caused by abandoned or poorly maintained signs and to avoid the confusion of conflicting adjacent signs. . . . This consistent approach is necessary to remove the need for the type of signs which compete for attention for the motorist, thereby creating traffic hazards as well as creating visual blight within the City. It is therefore within the health, safety and welfare responsibility of the City of Livonia that this section of the ordinance is promulgated.

It is clear that the primary rationales for the billboard restrictions in defendant's zoning ordinance were promoting aesthetic features, including the prevention of visual blight, and reducing traffic hazards for motorists. Each of these factors constitutes a legitimate governmental interest in regulating billboards. See *Metromedia, Inc v City of San Diego*, 453 US 490, 507-508; 101 S Ct 2882; 69 L Ed 2d 800 (1981) (opinion by WHITE, J.) ("Nor can there be substantial doubt that the twin goals that the ordinance seeks to further—traffic safety and the appearance of the city—are substantial governmental goals"); *id*. at 559-560 (BURGER, C.J., dissenting).

Plaintiff, however, contends that defendant did not offer any evidence that billboards actually affect traffic safety. In *Metromedia,* a majority of the United States Supreme Court, composed of the plurality opinion as well as the two dissenting opinions, rejected the argument that the record was inadequate to show any connection between billboards and traffic safety. The plurality opinion stated:

> The California Supreme Court noted the meager record on this point but held "as a matter of law that an ordinance which eliminates billboards designed to be viewed from streets and highways reasonably relates to traffic safety." 26 Cal. 3d, at 859, 610 P.2d, at 412. Noting that "[billboards] are intended to, and undoubtedly do, divert a driver's attention from the roadway," *ibid*., and that whether the "distracting effect contributes to traffic accidents invokes an issue of continuing controversy," *ibid*., the California Supreme Court agreed with many other courts that a legislative judgment that billboards are traffic hazards is not manifestly unreasonable and should not be set aside. We likewise hesitate to disagree with the accumulated, commonsense judgments of local lawmakers and of the many reviewing courts that billboards are real and substantial hazards to traffic safety. There is nothing here to suggest that these judgments are unreasonable. As we said in a different context, *Railway Express Agency, Inc. v. New York,* [336 US 106, 109; 69 S Ct 463, 465; 93 L Ed 533 (1949)]:

> We would be trespassing on one of the most intensely local and specialized of all municipal problems if we held that this regulation had no relation to the traffic problem of New York City. It is the judgment of the local authorities that it does have such a relation. And nothing has been advanced which shows that to be palpably false. [*Metromedia*, 453 US at 508-509 (WHITE, J.).]

Two of the dissenting opinions also implicitly agreed with the plurality's rejection of the claim that the record was inadequate and agreed that advancing aesthetic interests, enhancing property values, and minimizing traffic hazards related to billboards are legitimate and rational governmental interests. See *id*. at 552 (STEVENS, J., dissenting); *id*. at 555, 560-561 (BURGER, C.J., dissenting). Accordingly, although we recognize the limited evidence presented by defendant in this case demonstrating the actual effect of billboards on traffic safety, we reject plaintiff's claim for the reasons stated in *Metromedia*. See also *Members of City Council of City of Los Angeles v Taxpayers for Vincent*, 466 US 789, 806-807; 104 S Ct 2118; 80 L Ed 2d 772 (1984) (reaffirming the conclusion of the majority of the justices in *Metromedia* that "the city's interest in avoiding visual clutter . . . was sufficient [on its own] to justify a prohibition of billboards[.]"). Similarly, Michigan law has recognized a municipality's authority to regulate billboard advertising for safety purposes as well as aesthetic reasons. See *City of Holland*, 234 Mich App at 692-693, citing *Gannett Outdoor Co of Michigan v City of Troy*, 156 Mich App 126, 134; 409 NW2d 719 (1986).

Further, plaintiff's own evidence does not directly dispute defendant's determination that billboards generally present a traffic hazard. Rather, the Federal Highway Administration study proffered by plaintiff, which focused on the effects of Commercial Electronic Variable Message Signs ("CEVMS"), expressly acknowledges that drivers gaze at the roadway ahead less frequently when standard billboards and billboards with changing messages are in sight. Although the study noted that "the probability of looking ahead at the road ahead was high across all conditions," including in the presence of billboards; indicated that "drivers still had access to information about what was in front of them through peripheral vision" even in the presence of standard and changing billboards; and suggested that drivers may also gaze at other objects along the roadways, none of these findings undermine defendant's legitimate interest in *minimizing* the distractions presented by all billboards in order to further traffic safety.

Thus, because defendant demonstrated that its ban on new billboards specifically is related to both aesthetic and traffic safety concerns, which are reasonable governmental interests rationally related to a total ban on new, off-premises billboards, plaintiff's equal protection claim must fail. See *Houdek*, 276 Mich App at 573-574. Accordingly, the trial court properly granted summary disposition in favor of defendant on this claim.

## C. EXCLUSIONARY ZONING UNDER THE ZEA

Lastly, plaintiff argues that § 18.50C of defendant's zoning ordinance violates the statutory prohibition against exclusionary zoning codified under § 207 of the ZEA. We disagree.

MCL 125.3207 provides:

A zoning ordinance or zoning decision shall not have the effect of totally prohibiting the establishment of a land use within a local unit of government in the presence of a demonstrated need for that land use within either that local unit of government or the surrounding area within the state, unless a location within the local unit of government does not exist where the use may be appropriately located or the use is unlawful.

Assuming, without deciding, that billboards qualify as a land use under MCL 125.3207, plaintiff has not demonstrated that § 18.50C is invalid under that statute.

"MCL 125.3207 prohibits municipalities from enacting any zoning ordinance 'totally prohibiting' a given land use if a 'demonstrated need' exists for that use, unless there is no location where the use may be 'appropriately located,' [or] the use is 'unlawful.' " *Kyser v Kasson Twp*, 486 Mich 514, 540; 786 NW2d 543 (2010); see also *id*. at 542 ("[T]he exclusionary zoning provision, MCL 125.297a, now MCL 125.3207, applies to all land uses within the community and precludes the zoning power from completely prohibiting a lawful land use where there is a demonstrated need for that land use within a jurisdiction."). Accordingly, a plaintiff challenging the ordinance under MCL 125.3207 must show a " 'demonstrated need' for a certain land use in order to overcome a zoning ordinance's 'effect of totally prohibiting the establishment of a land use within a local unit of government.' " *Ter Beek v City of Wyoming*, 495 Mich 1, 22 n 8; 846 NW2d 531 (2014). See also *City of Holland*, 463 Mich at 684 (stating the elements of an exclusionary zoning claim under MCL 125.592, the predecessor of MCL 125.3207).

Defendant's ordinance has the effect of totally banning billboards in the city since there no longer are any billboards in existence that preceded the adoption of the billboard ban in 1952, and because § 18.50C prohibits the erection any new billboards. Even so, plaintiff has failed to show a demonstrated need for billboards in Livonia or in the surrounding area.

The trial court concluded that there was no demonstrated need for billboards within defendant's city limits because the billboards permitted by other surrounding communities adequately addressed any such need. We agree that the trial court's grant of summary disposition on this claim was proper because plaintiff demonstrated, at most, that there is a demand for billboards as a means of communication and they can be useful to communities. However, plaintiff has failed to demonstrate that there is a *public need* for billboards *within defendant's boundaries*.

With its response to defendant's motion for summary disposition, plaintiff provided many examples of the ways in which billboards are used to communicate with the public. It also identified numerous individuals as well as public and private entities that routinely use billboards to communicate with the public. However, these examples do not demonstrate that billboards are needed in order to communicate with the public in Livonia, particularly when, as the trial court observed, there are many billboards within the surrounding communities, well within two miles of defendant's boundaries. Instead, these examples merely reflect that there is a demand for billboards among individuals and organizations that utilize billboards as a means of advertising and sharing information. But plaintiff provided no evidence to this Court, the trial court, or the zoning board that reflected any individual or corporate need for billboards in

Livonia, and thus failed to satisfy its burden to oppose defendant's motion for summary disposition.

Likewise, it is apparent that plaintiff has a desire to erect the billboard instigating the instant suit because it derives income, in light of this demand, from selling space on its billboards wherever they are erected. We have previously explained, however, that a "desire" for a specific land use is not the same as a "demonstrated need" for that use. In *Outdoor Sys, Inc v City of Clawson*, 262 Mich App 716, 721; 686 NW2d 815 (2004), we concluded that MCL 125.592—the predecessor to MCL 125.3207, which included nearly identical language to the current statute under the ZEA—required proof "of public need for new billboards rather than a demand for those billboards by advertisers." See also *City of Holland*, 234 Mich App at 698. Given the substantively identical statutory language under MCL 125.3207, we conclude that the same is true in this case.

Thus, because plaintiff failed to establish a genuine issue of material fact as to whether there is a demonstrated public need for billboards within defendant's boundaries, the trial court properly granted summary disposition in favor of defendant.[6]

## IV. CONCLUSION

Plaintiff has failed to demonstrate that the trial court erred in granting summary disposition in favor of defendant on its "common law" exclusionary zoning, constitutional equal protection, and statutory exclusionary zoning claims.

Affirmed.

/s/ Christopher M. Murray
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan

---

[6] Plaintiff briefly contends that the trial court erred in granting summary disposition before plaintiff conducted discovery in order to establish a need for billboards in Livonia. We deem this issue abandoned because it was not raised in the statement of questions presented. MCR 7.212(C)(5); *Ypsilanti Fire Marshal v Kircher (On Reconsideration)*, 273 Mich App 496, 543; 730 NW2d 481 (2007), lv gtd in part 480 Mich 910 (2007). Nevertheless, even if we were to review this unpreserved claim, we would conclude that plaintiff has failed to demonstrate that reversal is warranted on such grounds because it has failed to provide any basis for us to conclude that discovery would have led to the detection of factual support for its claim. See *Duray Dev, LLC v Perrin*, 288 Mich App 143, 150; 792 NW2d 749 (2010); *Dresden v Detroit Macomb Hosp Corp*, 218 Mich App 292, 295-296; 553 NW2d 387 (1996).